**Donald L. HAYWARD, Appellee,**

v.

**UNITED STATES PAROLE COMMISSION, Joseph Petrovsky, Warden, Appellant.**

**No. 81–1007.**

United States Court of Appeals, Eighth Circuit.

Submitted June 18, 1981.

Decided Sept. 18, 1981.

Rehearing and Rehearing En Banc Denied Nov. 19, 1981.

---

Patrick J. Glynn, Atty., U. S. Parole Commission, U. S. Dept. of Justice, Washington, D. C., Thomas K. Berg, U. S. Atty., D.Minn., Minneapolis, Minn., Michael A. Stover, argued, Atty., U. S. Parole Commission, U. S. Dept. of Justice, Washington, D. C., for appellant.

Brian C. Southwell, Minneapolis, Minn., argued, for appellant.

Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge and ARNOLD, Circuit Judge.

ROSS, Circuit Judge.

The United States Parole Commission (Commission) appeals the district court's decision to grant a writ of habeas corpus pursuant to 28 U.S.C. § 2241. We reverse. 502 F.Supp. 1007.

On October 22, 1976, Donald L. Hayward was sentenced to seven years plus a special parole term of three years for distribution of heroin in violation of 21 U.S.C. § 841(a)(1). Hayward was sentenced under 18 U.S.C. § 4205(b)(2) (effective May 14, 1976) which states that "the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may be released on parole at such time as the Commission may determine." Section 4205(b)(2) was passed as part of the Parole Commission and Reorganization Act of 1976, 18 U.S.C. § 4201, *et seq.*, and was a reenactment of previous sentencing law, 18 U.S.C. § 4208(a)(2).

The Commission guidelines in effect at the time Hayward was sentenced rated his offense in the "very high" severity category which, coupled with his salient factor score, indicated a range of 26 to 36 months to be served prior to parole. *See* 28 C.F.R. § 2.20 (1974). However, by the time of Hayward's first parole hearing on March 7, 1978, the guidelines had been revised. The change in guidelines placed Hayward in a range to be served prior to parole of 40 to 55 months due to a new severity rating ("Greatest I")

for large scale sale of "hard drugs" over $100,000. *See* 28 C.F.R. § 2.20 (1978). Following the initial hearing, it was recommended that Hayward be continued for a four-year reconsideration hearing and his case was designated "original jurisdiction" and referred to the National Commissioners due to his offense's "unusual sophistication" and because he was "part of a large scale criminal conspiracy."

On May 4, 1978, the National Commission decided that a decision above the guidelines (40–55 months) was warranted because his offense was unusually sophisticated in that he was "part of an ongoing smuggling and distribution operation involving 12 codefendants and covering a period of 2 years or more." The notice also stated that a statutory interim hearing was scheduled for March 1980.

On September 19, 1979, and May 22, 1980, interim review hearings were conducted at the request of the regional commissioner. The September hearing resulted in a recommendation that Hayward be continued to the expiration of his sentence and by notice dated November 13, 1979, Hayward was so notified by the National Commissioners. The notice stated again that a decision above the guidelines was warranted because "you are a poorer parole risk than indicated by your salient factor score in that your offense was unusually sophisticated * * *."

The notice issued following the May 22, 1980 hearing stated these same reasons for continuing Hayward to expiration of his sentence and a decision above the guidelines. The notice, however added as a reason that "you violated a public trust in that you were a police officer at the time you were involved in the offense."

At both the September 1979 and May 1980 hearings the guideline range applied was 40 to 52 months due to a 1979 amendment. Hayward states that if he had been continued to expiration, he would have served approximately 58 months due to good time credit.

On February 23, 1979, Hayward petitioned for habeas corpus relief based on the failure of the Commission to consider that he was sentenced under Section 4205(b)(2) and an alleged violation of the ex post facto clause by application of guidelines not in force at the time of his sentence. This petition was denied; however, on appeal this court, with the written concurrence of the appellee, remanded the case for an evidentiary hearing on two issues: (1) whether the Commission acted within its statutory authority in denying the parole application; and (2) whether the application of changes in Commission regulations to Hayward violates the ex post facto clause.

After the evidentiary hearing, the district court ordered that Hayward be reconsidered for parole eligibility based on two lines of reasoning. First, the court found that based on *Edwards v. United States*, 574 F.2d 937 (8th Cir.), *cert. dismissed*, 439 U.S. 1040, 99 S.Ct. 643, 58 L.Ed.2d 700 (1978) a judge who sentences under Section 4205(b)(2) has an "objective expectation * * that the prisoner's institutional conduct and rehabilitation will be major factors in the Parole Board's determination." *Id.* at 941. The district court found that the failure of the notices to mention Hayward's excellent institutional adjustment showed that it was not a "major consideration." Also, the court found that the Commission's reasons for a decision above the guidelines were all reasons known to the sentencing judge and therefore Hayward had been denied meaningful parole consideration. The second reason for ordering reconsideration was that application of new guidelines adopted after Hayward's sentencing was found to violate the ex post facto clause. The district court found that the guidelines "have the force and effect of law," and under *Geraghty v. United States Parole Commission*, 579 F.2d 238 (3d Cir. 1978), vacated and remanded on other grounds, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed. 479 (1980), the change in guidelines deprived Hayward of "the possibility of a substantially more lenient punishment." *Id.* at 265.

The Commission failed to hold a reconsideration hearing as ordered by the district court. The district court then granted the

writ of habeas corpus and Hayward was released after serving 40 months.

### I. 18 U.S.C. § 4205(b)(2) and the Parole Commission and Reorganization Act of 1976.

Hayward was sentenced *after* Section 4205(b)(2) was reenacted under the Parole Commission and Reorganization Act of 1976. He was also sentenced almost three years *after* the Commission began the use of "guidelines." *See United States v. Addonizio*, 442 U.S. 178, 182 n.4, 99 S.Ct. 2235, 2238 n.4, 60 L.Ed.2d 805 (1979). Considering *when* Hayward was sentenced, the only issue presented is whether under a Section 4205(b)(2) sentence the Commission may consider the unusual sophistication of an offense a more important factor than excellent institutional adjustment in reaching a parole decision above the guidelines.[1]

The Supreme Court in *Addonizio* emphasized the discretion granted the Commission as follows:

> The decision as to when a lawfully sentenced defendant shall actually be released has been committed by Congress, with certain limitations, to the discretion of the Parole Commission. Whether wisely or not, Congress has decided that the Commission is in the best position to determine when release is appropriate, and in doing so, to moderate the disparities in the sentencing practices of individual judges. The authority of sentencing

judges to select precise release dates is, by contrast, narrowly limited: the judge may select an early parole eligibility date, but that guarantees only that the defendant will be considered at that time by the Parole Commission.

*Id.* at 188–89, 99 S.Ct. at 2242 (footnotes omitted).

 Under 18 U.S.C. § 4205, the sentencing judge has three alternative methods for determining parole eligibility, Section 4205(a), (b)(1), and (b)(2). *See Edwards v. United States*, 574 F.2d 937, 941 (8th Cir.), *cert. dismissed*, 439 U.S. 1040 (1978). While the sentencing judge may alter *when* a prisoner will be considered for parole, "whether the defendant will actually be paroled at that time is the decision of the Parole Commission." *United States v. Addonizio, supra*, 442 U.S. at 189 n.15, 99 S.Ct. at 2242 n.15. In passing the 1976 Act, Congress also noted that regardless of when a prisoner may be eligible for parole, the "standards and criteria" applied by the Commission in deciding whether to grant parole are the same.

> The standards for release on parole and for revocation of parole are not significantly changed from existing law. The only notable change is that the standards and criteria are made the same for all federal prisoners *without regard to which of the three main sentencing alternatives is utilized by the court.* This will be of

---

1. Hayward's arguments relied heavily on cases which do not apply in his situation and whose viability after *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) are highly questionable.

 Relief under *Kortness v. United States*, 514 F.2d 167 (8th Cir. 1975) and similar cases such as *Edwards v. United States*, 574 F.2d 937 (8th Cir.), *cert. dismissed*, 439 U.S. 1040, 99 S.Ct. 643, 58 L.Ed.2d 700 (1978) required that "the sentence was imposed prior to or contemporaneous with the adoption of the Parole Board guidelines." *Id.* at 945. *Kortness, Edwards* and similar cases rested on the assumption that § 2255 relief was available where the sentencing judge's "objective expectations" of "meaningful parole consideration" had been thwarted by the *subsequent* adoption and use of the guidelines. *See Edwards v. United States, supra*, 574 F.2d at 944–45. In *Addonizio*, the

Supreme Court held that § 2255 relief was not available to enforce the "subjective intent of the sentencing judge." *United States v. Addonizio, supra*, 442 U.S. at 187, 99 S.Ct. at 2241. While *Addonizio* labels the expectation of the sentencing judge as "subjective," the opinion notes that the expectation of the sentencing judge was allegedly due to "generally-held notions—of the operation of the parole system in 1970." *Id.* at 181 n.3, 99 S.Ct. at 2238 n.3.

In any event, Hayward was sentenced *after* the Parole Commission and Reorganization Act of 1976 became effective and thus any "objective expectation" must be based on that Act. As far as any "subjective expectation," Hayward previously brought a § 2255 action and the sentencing judge found the guidelines did not alter his intentions.

significant benefit to the federal correctional institutions because offenders sentenced for similar crimes under similar circumstances will be required to serve comparable periods of incarceration.

S.Rep.No.94–369, 94th Cong., 2d Sess., 18 (1975), reprinted in [1976] U.S.Code Cong. & Ad.News 335, 339–40 (emphasis added).

The statutory criteria for release which, therefore, apply to Hayward are contained in 18 U.S.C. § 4206 (effective May 14, 1976), which provides in pertinent part:

§ 4206. Parole determination criteria

(a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, *and if the Commission, upon consideration of the nature and circumstances of the offense* and the history and characteristics of the prisoner, determines:

(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and

(2) that release would not jeopardize the public welfare;

subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.

(b) * * *

(c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is *good cause* for so doing; *Provided*, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.

(Emphasis added.)

■ Section 4206 does not state that good institutional adjustment is a major factor in determining whether to parole, but rather only one of many factors. While the district court believed that the absence of any statement regarding institutional adjustment in the notices to Hayward reflected a failure to consider this factor, we must disagree. The summaries prepared following the parole hearings clearly reflect consideration of Hayward's institutional adjustment and reports on his conduct were introduced at the hearings. The weight to be given this factor is a matter of discretion and under Section 4206 is considered in conjunction with the "nature and circumstances of the offense."[2]

■ Section 4206 also requires that there be "good cause" for a parole decision above the guidelines. Hayward contends that factors known at the time of sentencing cannot be relied on as "good cause" for exceeding the guidelines. However, this argument fails because the legislative history reflects an acceptance of such factors as establishing "good cause."

For the purposes of this section "good cause" means substantial reason and includes only those grounds put forward by the Commission in good faith and which are not arbitrary, irrational, unreasonable, irrelevant or capricious.

The definition of what constitutes good cause to go outside the established guidelines can not be a precise one, because it must be broad enough to cover many circumstances.

For example, in making a parole release determination above the guidelines, the Commission would consider factors which include whether or not the prisoner was involved in an *offense with an unusual degree of sophistication or planning*, or has a lengthy prior record, or was *part of a large scale conspiracy or continuing criminal enterprise.*

H.R.Conf.Rep.No.94–838, 94th Cong., 2d Sess. 27, reprinted in [1976] U.S.Code Cong. & Ad.News 351, 359 (emphasis added).

---

**2.** The Second Circuit in *Moore v. Nelson*, 611 F.2d 434 (2d Cir. 1979) reached a similar result based on essentially the same issue as that raised by Hayward. In *Moore v. Nelson* the court noted that "[w]ith the enactment of the PCRA and the increased realization within the judiciary of the manner in which the guidelines are applied, it should now be clear to all sentencing judges that rehabilitation plays a minor part in the Commission's decision to parole a prisoner, and has no special significance for (b)(2) prisoners." *Id.* at 438.

For these reasons there is no basis for a finding that under 28 U.S.C. § 2241 the Commission's actions amount to a "violation of the Constitution or laws * * * of the United States."

## II. Ex Post Facto Clause.

The Commission argues that the district court's first error in analysis occurred when the court failed to consider the parole system in effect when Hayward committed the crime and instead focused on the system in effect when Hayward was sentenced. The Commission states that Hayward's crime was committed from January 1970 to August 1971 and the ex post facto clause refers to "the law annexed to the crime, when committed." *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798). Thus, the Commission believes that any ex·post facto analysis must be between the use of no guidelines (pre-1973 system) and the current system's use of guidelines.

We agree with the Commission's argument. In the Supreme Court's most recent ex post facto case involving a Florida good time statute, the analysis focused on the date of the offense and the statute in effect on that date. *See Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). In *Weaver v. Graham* the Supreme Court specifically noted that a statute "violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense." *Id.* at 30, 101 S.Ct. at 965.

Inasmuch as we hold that there is no ex post facto problem because the law at the time the crime was committed did not give the defendant any expectation of any particular parole system, we therefore decline to reach the question of whether or not the parole guidelines are laws, rules, or guideposts which would violate the ex post facto clause.

For these reasons we hold that the application of the guidelines to Hayward does not violate the ex post facto clause.

The decision of the district court to grant the writ of habeas corpus is reversed.