**David A. STAEGE, Jr., Appellant,**

v.

**UNITED STATES PAROLE COMMISSION, Appellee.**

**No. 81–1846.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 5, 1982.

Decided Feb. 10, 1982.

David A. Staege, Jr. pro se.

James M. Rosenbaum, U. S. Atty., Joseph T. Walbran, Asst. U. S. Atty., D. Minn., Minneapolis, Minn., for appellee.

Before HEANEY, ROSS and ARNOLD, Circuit Judges.

PER CURIAM.

David A. Staege, Jr., appeals from the District Court's [1] order denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Staege seeks review of his parole revocation, and he raises the same four arguments on appeal that he presented to the District Court: (1) that the Parole Commission reclassified his offense severity from "high" to "very high" in violation of its own regulations; (2) that the Notice of Action sent to him did not sufficiently explain the reasons for this reclassification; (3) that the Parole Commission erred in failing to consider expressly either Staege's institutional adjustment or the sentencing court's recommendation; and (4) that the Parole Commission violated its regulations in delaying Staege's revocation hearing more than eighteen months past the beginning of his new state prison term.

I.

On December 4, 1972, Staege was convicted of bank robbery and sentenced to 12 years at the Federal Correctional Institution in Sandstone, Minnesota. He was paroled on February 15, 1978, with 2354 days of his original sentence remaining to be served. Four months later, Staege was arrested by the State of Minnesota for the burglary of 462 firearms with a wholesale value of $80,000 from a warehouse in Minnesota. The federal government issued a parole-violator warrant against Staege on June 9, 1978, when it learned of his burglary arrest.

On July 11, 1978, Staege was sentenced by a Minnesota state court to 0–5 years for burglary. He was evidently an exemplary inmate while in state custody, and he was granted parole on May 11, 1980. He refused to sign the parole papers, however, resulting in a delay in his release by the state until October 17, 1980. Although the state correctional officials recommended that the federal detainer against Staege be dropped because of his excellent institutional adjustment, the federal authorities were not persuaded, so on October 17, 1980, Staege was taken back into federal custody.

Staege's parole-revocation hearing took place on November 12, 1980. The hearing-

---

1. The Honorable Miles W. Lord, Chief Judge, United States District Court for the District of Minnesota, adopting the report and recommen- dation of the Honorable J. Earl Cudd, United States Magistrate for the District of Minnesota.

examiner panel classified his offense as a property offense in the $20,000–$100,000 range and assigned it a "high" severity rating under the guidelines contained in 28 C.F.R. § 2.20 (1980). In view of Staege's salient-factor score of 1, the guidelines indicated he ought to serve 34–44 months before reparole, and the examiners recommended Staege be given the maximum of 44 months.

Upon review of the revocation proceedings, William D. Dawson, an Administrative Hearing Examiner (AHE) in the Regional Office of the Parole Commission, decided that Staege's offense-severity rating should be "very high" instead of "high," because his offense was more akin to "Breaking and entering—armory with intent to steal weapons" than to a simple property offense. According to the guidelines, a "very high" offense rating combined with Staege's salient-factor score of 1 yields a range of 60–72 months to be served before reparole. Regional Commissioner Mulcrone agreed with AHE Dawson, and by order dated November 25, 1980, Staege was thus reclassified. This time, however, he was placed at the minimum end of the guideline range and therefore was continued to presumptive parole after 60 months.

Staege unsuccessfully appealed his reclassification to both the Regional Commissioner and the National Appeals Board of the Parole Commission, so he exhausted his administrative remedies before filing his habeas corpus petition in the District Court on March 31, 1981. The District Court denied Staege's petition on July 14, 1981, and he filed this appeal on August 10, 1981.

## II.

### A. *Reclassification*

Staege's first argument directly attacks the validity of the reclassification of his offense severity from "high" to "very high." He contends that the initial characterization of his offense as a property offense in the $20,000–$100,000 range was correct and that the later reclassification was inconsistent with the Parole Commission's own regulations. The Parole Commission responds (and the District Court held) that the reclassification was an appropriate exercise of its discretion.

■■■ We agree. Although the Commission, like every other federal agency, is obliged to obey its own regulations, courts usually defer to an agency's interpretation of its own regulations, and that interpretation should not be rejected unless shown to be unreasonable. See *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792–801, 13 L.Ed.2d 616 (1965); *McClanahan v. Mulcrome*, 636 F.2d 1190, 1191 (10th Cir. 1980). Here, Staege robbed a warehouse, not a building specifically denominated as an "armory," but the Parole Commission could reasonably conclude that a building housing 462 guns *is* an armory for all practical purposes.

The regulations make clear that the guidelines are only guidelines and may be disregarded if the circumstances warrant. See 28 C.F.R. §§ 2.20(c), 2.21(c). Furthermore, General Note C following the guidelines in 28 C.F.R. § 2.20 states that "[i]f an offense behavior can be classified under more than one category, the most serious applicable category is to be used." The Parole Commission's reclassification of Staege simply placed him in the most serious category applicable to him.

### B. *Notice of Action*

■ Staege's second argument challenges the sufficiency of the explanation for the reclassification given in the Parole Commission's Notice of Action. He claims that this explanation did not comply with the Parole Commission's duty under 18 U.S.C. § 4206(b) to "state with particularity" its reasons for parole denial. The Parole Commission responds that its Notice of Action compares favorably to others found to satisfy statutory and due-process requirements. *See, e.g., Shahid v. Crawford*, 599 F.2d 666, 670–72 (5th Cir. 1979); *Bowles v. Tennant*, 613 F.2d 776, 778–79 (9th Cir. 1980). In addition, Staege has not alleged that he suffered any prejudice from the supposed defect in the Notice of Action. On the contrary, he filed a detailed response in appealing the Notice of Action, which dem-

onstrates his understanding of the explanation of his parole status contained therein.[2]

### C. *Institutional Adjustment*

■ Staege's third argument is that the Parole Commission should have considered his institutional adjustment as a major factor in its decision on his parole status. The case which Staege uses to support his argument, *Hayward v. United States Parole Commission*, 502 F.Supp. 1007 (D.Minn. 1980), was reversed by this Court, 659 F.2d 857 (8th Cir. 1981) (parole denial sustained despite lack of specific reference to institutional adjustment). Also, whereas in *Hayward* the Parole Commission's decision exceeded the guidelines, here the Parole Commission acted within the guidelines as reasonably interpreted, and the guidelines were specifically formulated to apply to "cases with good institutional adjustment and program progress." 28 C.F.R. § 2.20(b).

■ Staege also contends the Parole Commission should have considered the state sentencing judge's alleged intent to have Staege's state and remaining federal sentences run concurrently. Even if such intent could be demonstrated, the Supreme Court held in *United States v. Addonizio*, 442 U.S. 178, 190, 99 S.Ct. 2235, 2243, 60 L.Ed.2d 805 (1979), that a sentencing court "has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term."

With respect to concurrency, Staege also complains that he was not given enough credit for his time spent in state custody. As the government's brief explains, there is a distinction between the credit given in applying the reparole guidelines and the credit given in calculating the extent of the violator term (*i.e.*, the balance of the defendant's federal sentence). Staege has been given full credit for his state sentence for reparole-guideline purposes pursuant to 28 C.F.R. § 2.21(b)(3), and in calculating his violator term, the Parole Commission has

given him full credit less 18 months, pursuant to 28 C.F.R. § 2.47(c)(2). Thus this complaint is groundless.

### D. *Delay*

■ Staege finally argues that under 28 C.F.R. § 2.47(a)(2)(i), his revocation hearing should have been held within 18 months of the beginning of his state sentence, when in fact it was not held until after his return to federal custody, which was 29 months after his state sentence commenced. The District Court dismissed this claim because it was the subject of Staege's previous habeas corpus petition, Civil 3–81–13 (D.Minn., filed Jan. 13, 1981). We see no abuse of discretion in the District Court's decision to consider the claim of delay in the previously filed case, instead of in this one.

The judgment is affirmed.

---

■

---

2. As noted in *Shahid v. Crawford, supra,* 599 F.2d at 671, the legislative purpose in passing 18 U.S.C. § 4206 was to guarantee an inmate "an understandable explanation of his parole status," quoting S.Rep.No.94–369, 94th Cong., 2d Sess. 24–25 (1975), U.S.Code Cong. & Admin.News 1976, pp. 335, 346.