**UNITED STATES of America, Plaintiff,**

v.

**Richard H. SNOOKS, Defendant.**

**No. 79–00109–01–CR–W–1.**

United States District Court, W. D. Missouri, W. D.

April 14, 1982.

Robert G. Ulrich, U. S. Atty., Cynthia A. Clark, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Albert N. Moskowitz, Asst. Federal Public Defender, Kansas City, Mo., Alex Bartlett, Bartlett, Venters & Platz, Jefferson City, Mo., Thomas M. Dawson, Leavenworth, Kan., for defendant.

## MEMORANDUM OPINION AND ORDER

JOHN W. OLIVER, Senior District Judge.

### I.

On October 26, 1979, this Court imposed three concurrent five year sentences (for securities and mail fraud violations) on defendant Richard H. Snooks, pursuant to applicable provisions of 18 U.S.C. § 4205(b)(2). On February 8, 1980 defendant filed a timely motion for reduction of sentence under Rule 35, F.R.Cr.P. This Court deferred ruling defendant's motion both on February 22, 1980 and again on August 13, 1980. In the February order we stated that deferral was proper because the basis of defendant's motion for reduction was his *fear* that the Parole Commission would give no consideration to the imposition of sentence under § 4205(b)(2) in determining his eligibility for parole. Defendant speculated, and his speculations later proved accurate, that the Commission would reevaluate the offense severity rating and reclassify the defendant in a greater offense category, thus prolonging his incarceration far beyond that term of custody projected by the Probation Office in the presentence report supplied the sentencing judge. He contended that the reclassification would effectively deprive him of any meaningful consideration for parole.

The files and records in this case did not reflect at that time what, if any, action had been taken by the Parole Commission. We therefore deferred any ruling, assuming that the Commission would, as they must under applicable law, give meaningful consideration to defendant for parole. At that time also, the Court ordered the government to advise the Court of any action taken by the Parole Commission.

On August 13, 1980, in the course of ruling a belated government motion challenging this Court's jurisdiction,[1] we further deferred ruling defendant's motion pending final administrative review of defendant's appeal. 493 F.Supp. 1364. We considered deferral proper because of the obvious question which had arisen, and was recognized by the initial panel, with respect to the amount of loss occasioned by defendant's fraudulent acts. We concluded that the Parole Commission was entitled to proceed in this case as in any other case to fairly determine what figure should be used in calculating the severity of the offense.

We, of course, could not then anticipate that it would be almost 18 months after the initial hearing and panel decision and a tortuous course up and down the appellate administrative process of the Commission before a final decision was rendered. A short statement of facts is necessary to put in focus the administrative maze defendant traveled before the Commission's action became final. We note as well the Court's substantial difficulties in obtaining the records from government counsel respecting the Commission's actions in this case as these delays unfortunately prolonged the already lengthy period which has passed since defendant's motion was filed more than two years ago.

## II.

*Statement of Facts and History of Proceedings Before the Parole Commission*

On February 26, 1980 defendant's initial parole hearing was held. When the guidelines promulgated by the Parole Commission for use in parole determinations were applied to defendant, he was given a salient factor score of 10 and his offense behavior was rated very high because the dollar amount involved in the fraud offense was determined to be between $100,000.00 and $500,000.00. He was continued to presumptive release date after service of 24 months, the base of the guideline period for his offense type and salient factor score. This period was less than the guideline period set forth in the presentence report prepared for the Court by the Probation Office. (The presentence report had indicated that the Court could anticipate under appropriate application of the guidelines that defendant would serve 26 to 36 months before release on parole.) Though defendant appealed the result of this hearing on every ground possible, the factual dispute in the series of hearings and rehearings that ensued centered on the proper categorization of defendant's offense behavior.[2]

For reasons we shall state below it is not necessary to recount every step taken in the course of the subsequent administrative review. Though additional documents were submitted at various levels of the administrative review of the initial guideline decision in defendant's case, it is also not necessary to discuss in detail the substance of all material submitted because we conclude that defendant was accorded the required opportunity to review and dispute the relevancy and accuracy of all information received by the Commission.[3] The relevant inquiry for the Court is whether the Com-

---

1. The government raised the same jurisdictional question presented in this case in *United States v. Demier*, 520 F.Supp. 1160 (W.D.Mo. 1981). We concluded in *Demier* that this Court had jurisdiction to reduce sentence after the expiration of the 120 day period set forth in Rule 35, F.R.Cr.P., when the motion was timely filed within the 120 day period. The Eighth Circuit affirmed our decision in *Demier, United States v. Demier*, 671 F.2d 1200 (8th Cir. 1982), and confirmed that *United States v. Williams*, 573 F.2d 527, 529 (8th Cir. 1978), upon which we relied in *Demier*, still states the applicable rule in this Circuit.

2. The evidence presented to the Commission at the first hearing with respect to severity of defendant's offense consisted of the October 19, 1979 presentence investigation report; the institutional progress report prepared by the prison staff, dated January 22, 1980, and certain records of bankruptcy actions filed with respect to Citizens Loan and Savings.

3. Defendant has contended throughout his appeal process that it was relevant that no *new* evidence was submitted which established a personal diversion by defendant of a sum sufficient to alter his classification. After a thorough review of all evidence considered by the

mission applied the same standard as that utilized in other fraud cases, and whether the Commission complied with the preponderance of the evidence standard prescribed by their own regulations in making their final determination.

At the initial hearing, the panel of Hearing Examiners focused on the amount of money defendant diverted to his own personal use in rating defendant's offense severity. The panel found a $250,000 diversion was established by virtue of defendant's guilty plea, but indicated that defendant could dispute this determination on appeal by presenting evidence to support the contention, which he advanced at his parole hearing, that only $96,000 was diverted to his personal benefit and that this amount only should be considered in classifying the offense severity in his case.

When defendant's first appeal reached the national level, the National Appeals Board concluded that the initial board had used an improper standard in evaluating defendant's offense severity and on October 16, 1980 remanded the case for a new hearing pursuant to 28 C.F.R. 2.26. The Board directed that the United States Attorney provide additional information with respect to whether the damage attributable to the fraudulent representations of defendant Snooks extended beyond those amounts personally diverted to causation of the overall loss suffered by depositors at Citizens. On remand, pursuant to the directions of the National Commissioners, the focus of the second hearing was changed to a considera-

tion of the total losses caused by defendant's fraudulent conduct, regardless of the amount actually diverted for personal use.[4]

The examiners stated at the commencement of the defendant's second hearing, December 15, 1980, that the severity of the offense behavior would now be considered on the basis of the six and a half million dollar loss to investors caused by the collapse of the institution. Defendant's offense was then classified in the Greatest I category based on this loss figure and the time he could expect to serve under the applicable guidelines was changed to 40 to 52 months. There was no *new* evidence to establish that defendant personally diverted a sum sufficient to change his offense rating from very high ($100,000.00 to $500,-000.00) to Greatest I (over $500,000.00). The new classification change resulted solely from the Commission's change in focus; the Commission now focused on the loss to investors when the savings and loan institution collapsed, rather than the amount of money which the defendant personally diverted.

At the conclusion of the second hearing the examiners indicated that they would request the Regional Commissioner to consider recommending the case for designation as an original jurisdiction case on the basis of the unusual attention it had received (28 C.F.R. § 2.17). The examiners did not attempt to support their conclusory finding that this case had received "unusual" attention.

Parole Commission, we have concluded that defendant's claim that no *new* evidence was submitted to the Board after the initial hearing which would establish the amount of the defendant's personal diversion is substantially correct. The validity of defendant's contentions with respect to the amount he personally diverted to his own use, however, are immaterial under the standard finally utilized by the Commission to determine offense severity and the analysis upon which defendant relied therefore need not be restated here.

4. The Parole Commission, as directed by the National Board, requested that form 792 be completed by the United States Attorney's office. In response, the United States Attorney submitted by letter dated November 26, 1980,

the Initial Report of the Postal Inspection Service dated August 15, 1979, a cash flow analysis prepared by the S.E.C. on August 8, 1979, and the transcript of defendant's guilty plea before this Court. Though, as defendant points out, the record establishes that this information was known to the United States Attorney prior to defendant's first parole hearing, there is no evidence to establish that it was part of the record before the Parole Commission prior to this time except to the extent that conclusions in the presentence report may have been based on this information. In any event, defendant has received his due process right for an opportunity to contest this information as required by *Evans v. Dillahunty*, 662 F.2d 522, 526 (8th Cir. 1981).

On December 19, 1980, however, the case was designated as an original jurisdiction case and was thus referred to the National Commissioners for decision. The Commission then concluded that the factual record was still inadequate to support the hearing examiners' severity rating and on January 26, 1981 the National Commissioners again requested additional information.[5]

On April 2, 1981, after consideration of the information received, the March 3, 1981 Probation Office letter and its enclosures, the National Commission again remanded this case—this time for disclosure to the defendant of this information. At the time of remand, the National Commission stated its view that although the major part of the actual losses occurred through poor business judgment, it concluded that the verifiable loss to Citizens attributable to defendant's fraud was $1,800,000.00. It specifically based that conclusion on the allegations contained in the first amended civil petition for damages in *Aylward et al. v. Snooks*, at page 36 of that petition, with respect to some $2,250,000 allegedly received as a result of the solicitation by defendant of $10,-000 minimum certificates of deposit. It indicated that the 2¼ million dollar figure could be used to support its conclusion on the theory that receipt of this amount by the Savings and Loan occurred after defendant began to misrepresent both the financial stability of Citizens and the nature of the commercial lending in which Citizens' business was concentrated. The case of *Aylward et al. v. Snooks* was never tried.

The Commission stated that it could find additional support for concluding defendant was responsible for this amount of the loss in the Postal Service investigative report dated August 15, 1979 and in the acts admitted by defendant by his plea of guilty to certain counts of the indictment. The Com-

mission accordingly ordered a third hearing to allow the defendant the opportunity to review the records it relied on and discuss the Commission's determinations with respect both to the total loss of depositors and to the amount investors deposited in response to the 10 percent certificate of deposit campaign in the years following the first falsified accounting reports made by defendant. At a third hearing subsequently held the panel merely adopted the opinion of the National Board. That decision was subsequently affirmed at all levels of appellate agency review.[6]

III. *Further Proceedings in the Court*

Consideration of defendant's claim that the Parole Commission failed to give him meaningful consideration for parole must focus on the facts of the original classification and the subsequent reclassification of his offense severity. The initial classification, "very high," was identical to that projected by the Probation Department in its presentence report to this Court on October 19, 1979. Clearly, the initial hearing panel, the Probation Department, and the United States Attorney's Office shared the view at that time that the offense severity in a mail fraud case was to be determined on the basis of defendant's personal diversion of funds.

The change in the standard applied to classify offense severity at the agency appellate level presented a question as to whether the Parole Commission had unlawfully deprived defendant of meaningful consideration for parole by applying a standard different from that usually applied in mail fraud cases in violation of its own regulations under the applicable statutes. The Court thus directed the government on September 25, 1981 to file a statement stating the usual standard applied by the Commission in rating offense severity in mail

---

5. The inquiry was directed through the Probation Office. On March 3, 1981 the Probation Office forwarded to the National Commissioners the replies it had received from Daniel Flanigan, successor trustee for Citizens Loan and Savings, plus the first amended petition filed in *Aylward, et al. v. Snooks*, in the 16th Judicial Circuit Court of Missouri, Case No. 78–3981.

6. The Regional Commissioner approved the Panel decision on April 27, 1981. The case was then again referred to the National Commission under the original jurisdiction designation May 18, 1981. The National Commission confirmed their earlier findings. Notice of the Commission's final decision was given on June 30, 1981.

fraud cases. After repeated unresponsive and inadequate filings by the government and repeated orders of this Court directing that the government file supplemental responses which stated the *actual practice* of the Commission in this regard, the government filed on December 14, 1981 an affidavit of the Chief Case Analyst for the National Appeals Board which stated that normally the examiners and regional commissioners correctly apply the total loss to victims occasioned by defendant's offense as the standard in rating severity in property offenses. The defendant did not and does not now dispute that the standard stated is that normally and properly applied in rating offense severity in property offense cases.

IV. *The Standard of Judicial Review*

Though the sentencing court has three alternative methods for determining parole eligibility under 18 U.S.C. § 4205, the decision as to when a defendant eligible for parole shall be released is committed under the Parole Commission and Reorganization Act of 1976, 18 U.S.C. §§ 4201 *et seq.*, to the discretion of the Parole Commission. The stipulation of the parties in this case establishes that defendant's claim that the Parole Commission guidelines give no consideration to the fact that a sentence is imposed pursuant to Section 4205(b)(2) is correct. However, the Eighth Circuit has held in cases decided after the sentences involved in this case were imposed that the Commission has authority under the 1976 Act to completely disregard a Section 4205(b)(2) sentence and that it may apply the *same* standards and criteria to all inmates in deciding whether to grant parole without regard to which of the three main sentencing alternatives are utilized by the Court. *Hayward v. U.S. Parole Commission*, 659 F.2d 857, (8th Cir. 1981), decided September 18, 1981, rehearing and rehearing en banc denied November 19, 1981, is the leading case.

*Hayward*, clearly indicates the broad reading given *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), in this Circuit with regard to the discretionary authority of the Commission in determining release dates within the sentence period imposed. The Court stated in *Hayward* that relief available under the *Edwards* doctrine, *Edwards v. United States*, 574 F.2d 937 (8th Cir. 1978), *cert. dismissed* 439 U.S. 1040, 99 S.Ct. 643, 58 L.Ed.2d 700 (1978), based on the objective expectations of the sentencing judge is simply not available in cases arising subsequent to the adoption and use of guidelines by the Commission.

We have stated both in earlier orders entered in this case and elsewhere our grave concern with the manner in which the Commission applies its guidelines in 4205(b)(2) cases. We have consistently indicated our agreement with the rationale of the Third Circuit's stated statutory and constitutional concern in *Geraghty v. United States Parole Commission*, 579 F.2d 238, 259 (3rd Cir. 1978), vacated and remanded on other grounds, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) that:

> To the extent that the Parole Commission makes individual judgments about the relative culpability of prisoners and the length of imprisonment proper to vindicate the needs of society yet fails to take account of the sentence imposed by the court, the Commission embarks, alone, on a task which is the traditional province of the judiciary. Insofar as the Commission attempts to make general rules as to the appropriate punishment for crimes which effectively bind parole decisions in all cases, it undertakes functions which are usually discharged by the legislature. Yet the Commission lacks the institutional safeguards of either the courts or the Congress: it has neither judicial independence and allegiance to the ideal of dispassionate and reasoned decisions nor legislative responsiveness to the popular will.
>
> \* \* \* \* \* \*
>
> The rigid categories called for by the parole guidelines would frequently nullify the discretion which the trial judges are required to exercise in evaluating each case on its individual merits.

It may well be that Congress itself could foreclose all sentencing options. But, absent a clear statement of such a purpose, we should be wary of attributing to Congress the intent to allow the Parole Commission to undertake such a wide-ranging overhaul of the criminal sentencing process.

■ However, we are bound by the rationale of the decisions of our controlling Court of Appeals. Because the recent Eighth Circuit cases have clearly indicated that they do not share the concern stated by the Third Circuit in *Geraghty*, we must follow the path chosen by our controlling Court of Appeals. We cannot properly ignore the fact that the Eighth Circuit cited the Second Circuit case of *Moore v. Nelson*, 611 F.2d 434 (2nd Cir. 1979), with approval when it reversed the district court in *Hayward*. The Second Circuit stated in *Moore* that it should now be clear to the judiciary that rehabilitation plays but a minor role in the Commission decisions and that the Commission totally disregards the district court's use of Section 4205(b)(2). *Hayward* reflects the Eighth Circuit's basic disagreement with the statutory and constitutional concerns expressed by the Third Circuit in *Geraghty*. We are therefore bound by the Eighth Circuit conclusion that the Act permits the Commission to apply its guidelines to (b)(2) prisoners and "precludes the courts from attempting to restructure the manner in which the Commission exercises its discretion in individual cases," regardless of the sentencing judge's objective expectation at the time of sentencing. *Moore* at 439.

Even under the current Eighth Circuit opinions the question is presented in regard to whether the Commission acted within its statutory authority and whether it gave defendant meaningful consideration for parole. Though the defendant's protected interest in parole is a limited one, our controlling Court of Appeals has recognized in *Evans v. Dillahunty*, 662 F.2d 522, 526 (8th Cir. 1981) that under the federal parole statutes the Commission is required to base its decisions on specifically defined criteria and that the defendant therefore has a pro-

tectible interest in parole which is entitled to some degree of due process.

■ After a complete review of the record of proceedings before the Commission, we find and conclude that in reclassifying the defendant's offense severity in this case the Commission acted pursuant to its statutory authority, in compliance with its own regulations, and within its broad discretionary authority as interpreted in cases noted herein, decided since defendant's motion was originally filed.

### Reclassification

The Commission must, like all other federal agencies, act in accordance with its own regulations. *Staege v. United States Parole Commission*, 671 F.2d 266 (8th Cir. 1982). We find and conclude that the Commission followed its regulations in reopening defendant's case for consideration of offense severity and, in fact, granted defendant an opportunity to contest the information presented to the Commission on which the altered decision as to severity was based.

28 C.F.R. § 2.19 provides that "the Commission may consider any substantial information available to it establishing the prisoner's offense severity rating ... provided the prisoner is appraised of the information and given the opportunity to respond. If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability."

Defendant did not and does not now dispute the data relied on by the Commission in determining defendant's responsibility for losses to investors. Rather, the defendant consistently placed in issue the *standard* applied by the Commission and contended throughout the proceedings before the Commission that only that sum which he personally diverted to his own use should be considered.

■■ Appropriate consideration must be given the fact that an initial panel's decision is not final; it is merely a recommendation. 28 C.F.R. § 2.24. It is also clear that once a determination is made to consider the case as one of original jurisdiction under 28 C.F.R. §§ 2.17 and 2.27, the Board is bound in no way by the initial hearing panel's decision.

An additional question is presented in regard to whether in concluding that defendant's offense behavior caused a loss exceeding $500,000 the Commission violated the evidentiary standards set forth in its own regulatory framework. It is quite apparent that the Commission must have based its final determination on the unproven allegations contained in an unadjudicated complaint; on data which it believed was contained in the proceedings related to defendant's guilty plea; and on the government's analysis of the offense behavior, as stated in Form 792, which contained the postal inspector's report and the SEC flow analysis.

We are satisfied that if a district court imposed a sentence in reliance upon the same sort of data as that relied upon by the Commission, its sentence might be adjudged to be invalid under principles stated in *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) and the progeny of that case.

The rationale of *Hayward*, and of *Staege v. United States Parole Commission, supra*, which followed and applied *Hayward*, establishes that the standard of factual accuracy applicable to a district judge in the discharge of his sentencing duty, under the presently adjudicated cases, simply is not to be considered to be applicable to the Parole Commission when it, in practical effect, "resentences" the defendant and actually decides how long that defendant is to be held in custody. The District of Minnesota was reversed by the Eighth Circuit in *Hayward* for having applied the rationale of the Third Circuit as stated in *Geraghty* to the factual circumstances in that case. *Hayward* suggested that the Eighth Circuit's earlier decisions in *Kortness v. United*

*States*, 514 F.2d 167 (8th Cir. 1975) and *Edwards v. United States, supra*, may no longer be viable in light of dictum contained in *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

The opinions of the Tenth and the Eighth Circuits are in general agreement in regard to questions which relate to the Parole Commission. *Dye v. United States Parole Commission*, 558 F.2d 1376, 1378 (10th Cir. 1977), for example, cited and relied upon *Brest v. Ciccone*, 371 F.2d 981, 982–83 (8th Cir. 1967), to support its conclusion that "it is not the function of courts to review the Board's discretion in denying parole or to repass on the credibility of reports received by the Board in making its determination." *Dye* also held that "appellant is in error in thinking that the Supreme Court's decision in *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), is applicable to his situation" for the reason that "the Commission is entitled to take into account factors which could not, for constitutional reasons, be considered by a court of law." (558 F.2d at 1379)

*Dye* was cited and relied upon by Judge Chilson of the District of Colorado in denying a defendant relief in *Butson v. Chairman, U.S. Parole Com'n.*, 457 F.Supp. 841 (D.C.Colo.1978). *Butson* involved factual circumstances which are closest to those presented in the case at bar. In that case the defendant contended that "the board's decision to deny parole was based on inaccurate information." *Butson* stated the following in regard to the defendant's claim in that case:

Specifically, petitioner alleges that the post sentence report is incorrect when it estimates that the monetary losses resulting from petitioner's crime totalled over $100,000. Petitioner points to the indictment, which allegedly makes mention only of the sum of $16,000 as the amount fraudulently procured by petitioner.

The information relied upon by the Parole Commission in that case was contained in a report of the probation office which showed that the $100,000 figure was based

on an unsupported statement of an attorney for one of the victims of the defendant's fraud. The district court, in reliance upon *Dye*, concluded that "it was not improper for the parole commission to consider material ... which would not be admissible in a court of law." 457 F.Supp. at 844. Judge Chilson added that:

> The petitioner had ample opportunity to voice his objections to the accuracy of the paragraph during the course of two administrative appeals. The record shows that he utilized this opportunity and that the alleged error was squarely raised and dealt with by both the regional and national appeals boards. Both boards chose to rely upon the report.
>
> \* \* \* \* \* \*
>
> The only function which the court can fulfill is to insure that the petitioner was afforded his right to review the report and express his objections to it in a meaningful manner. The petitioner did have such an opportunity and no judicial relief would be appropriate.

We are satisfied that application of the rationale upon which the current rules of decision of the Eighth Circuit are based requires that we deny defendant's pending motion for essentially the same reasons as those stated by Judge Chilson in the *Butson* case. We add, however, that except for the rejection by the Eighth Circuit in *Hayward* of the rationale of the Third Circuit's opinion in *Geraghty*, we would have granted defendant's pending motion and reduced defendant's sentence to the 36 months, the maximum period of time which this Court, the probation office, and the government assumed, at the time sentence was imposed, that defendant would actually serve before being released from custody.

For the reasons stated above, we are required to find and conclude that defendant has been accorded that consideration for parole to which he is entitled under the present rules of decision of the Court of Appeals for the Eighth Circuit. Accordingly, it is

ORDERED that defendant's Rule 35 motion for reduction of sentence should be and hereby is denied.