**Robert BIALKIN, Petitioner-Appellee,**

**v.**

**Benjamin F. BAER, et al.,
Respondents-Appellants.**

**No. 1601, Docket 83–2127.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 8, 1983.

Decided Oct. 11, 1983.

Barry L. Stevens, Asst. U.S. Atty., D. Conn., Bridgeport, Conn. (Alan H. Nevas, U.S. Atty., D. Conn., New Haven, Conn., of counsel), for respondents-appellants.

Marshall Perlin, New York City, for petitioner-appellee.

Before VAN GRAAFEILAND and PRATT, Circuit Judges, and COFFRIN, District Judge.[*]

GEORGE C. PRATT, Circuit Judge:

The United States Parole Commission appeals from the February 10, 1983 judgment of the District Court for Connecticut, T.F. Gilroy Daly, *Chief Judge,* granting Robert Bialkin's petition for a writ of habeas corpus. The district court concluded that the commission erred in classifying petitioner's offense as one of "low moderate" severity, when the commission's guidelines "clearly indicate that [his] offense was one of low severity." Further, the court ruled that the commission abused its discretion when it set Bialkin's presumptive parole date five months beyond the time recommended by the commission's guidelines for prisoners with similar offense and offender characteristics. The district court, 567 F.Supp. 15, ordered the commission to establish an appropriate parole release plan for Bialkin and to release him within two weeks.

For the reasons set forth below, we reverse.

## I.

In 1978, Bialkin pled guilty in the United States District Court for the District of Massachusetts to three indictments and an information charging him with interstate transportation of stolen securities and money obtained therefrom. After serving part of his concurrent ten-year prison terms, he was released on parole March 16, 1981.

Less than three months later, on May 30, 1981, Bialkin was arrested in Canada and charged with possession of $600 worth of stolen traveler's checks. He pled guilty and was sentenced to 30 days. As a result, the commission issued a parole violation warrant, and, after a parole revocation hearing on August 17, 1981, the commission found

---

[*] Honorable Albert W. Coffrin, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

that Bialkin had violated the conditions of his parole and that his parole should be revoked. Based on arrest reports made by Canadian officials indicating that Bialkin's offense involved $7,000 worth of traveler's checks, the commission concluded that his new offense was of "moderate" severity. It also assigned him a salient factor score of "3" partly as the result of his many prior convictions. Under the parole guidelines these combined classifications call for a presumptive parole date in the range of 24 to 32 months. The commission did not then think a parole date above this particular guideline was warranted, and it decided to reparole Bialkin after he served 32 months.

Bialkin then filed this action, claiming that his offense had involved not $7,000, but only $600 worth of traveler's checks and that his rating under the guidelines should have been not "moderate" but "low" severity, which would have carried a presumptive parole date of 12 to 16 months. Satisfied that there was insufficient evidence that Bialkin's offense involved $7,000 worth of traveler's checks, the commission agreed to reopen his case and filed a motion to dismiss this action without prejudice. Ruling that Bialkin's offense, possession of $600 worth of traveler's checks, should be classified "low" severity under the guidelines, the court granted the motion and ordered a rehearing before the commission to determine if a decision outside this guideline was warranted.

After the rehearing, the hearing examiners rated Bialkin's offense as one of "low moderate" severity, reasoning that stolen checks are not simply stolen property, but are similar to stolen securities. Combined with Bialkin's salient factor score of "3", this new rating indicated a presumptive parole date of 16 to 22 months. The examiners further recommended that Bialkin serve 10 months beyond the time suggested by the guideline, because of the pattern of his criminal activity.

Accepting the examiners' recommendation in part, the commission classified Bialkin's offense as one of "low moderate" severity, but ruled that, although an additional

period above the guideline was justified, it should be for only five instead of the ten months recommended by the examiners. The reasons why the commission decided to go beyond the guideline were (1) this was Bialkin's seventh conviction in the past 15 years for either check or stock fraud; and (2) Bialkin's latest offense had occurred less than three months after his release on parole.

Bialkin then filed a motion to vacate the prior judgment of dismissal and for a writ of habeas corpus. He argued the commission did not have the authority to give him a rating other than "low" severity, and also that it had no valid reason to go above the guideline. The district court granted the writ of habeas corpus and ordered Bialkin released from custody.

## II.

Congress vested in the sound discretion of the commission the sole power to grant or deny parole, *Billiteri v. U.S. Board of Parole,* 541 F.2d 938, 944 (2d Cir.1976), and directed the commission to establish guidelines for exercising its powers, including the granting, denying and modifying of parole, 18 U.S.C. §§ 4203(a)(1), (b)(1), and (b)(3) (1976). Under its guidelines, the commission determines for each prisoner, the severity of his offense behavior (offense characteristics) and classifies it in any of six categories ranging from "low" to "Greatest II". The commission also determines a prisoner's parole prognosis (offender characteristics) and calculates his "salient factor score" on a scale from 0 to 10. For various combinations of offense severities and salient factor scores the guidelines indicate a range of "customary range of time to be served before release" on parole. 28 C.F.R. § 2.20(b) (1982). The regulations specifically provide that the time ranges are "merely guidelines" and that "[w]here the circumstances warrant, decisions outside of the guidelines (either above or below) may be rendered." 28 C.F.R. § 2.20(c) (1982).

After revoking parole based on "new criminal conduct", as in the case at bar, the commission must calculate "the appropriate

severity rating for the new criminal behavior". 28 C.F.R. § 2.21(b)(1) (1982). Because violations of parole may be based on non-federal offenses, the regulations permit the appropriate severity level to "be determined by analogy with listed federal offense behaviors". *Id.* As with the original parole, decisions on reparole may, when circumstances warrant, fall outside the guidelines. 28 C.F.R. § 2.21(c) (1982).

■ Federal court review of parole commission decisions is extremely limited, because the commission has been granted broad discretion to determine parole eligibility. 18 U.S.C. § 4218(d); *Garcia v. Neagle,* 660 F.2d 983 (4th Cir.1981), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982). Deference to the commission's interpretation of its own regulations is required unless that interpretation is shown to be unreasonable. *Staege v. U.S. Parole Commission,* 671 F.2d 266, 268 (8th Cir. 1982); *see Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

■ The appropriate standard for review of the commission's decisions is whether there has been an abuse of discretion. *Solomon v. Elsea,* 676 F.2d 282, 290 (7th Cir.1982); *Zannino v. Arnold,* 531 F.2d 687, 690–91 (3d Cir.1976). This means that a court may not substitute its own judgment for that of the commission, *Zannino v. Arnold,* 531 F.2d at 691, but may consider only whether there is a rational basis for the commission's decision. *Staege v. U.S. Parole Commission,* 671 F.2d at 268; *see Billiteri v. U.S. Board of Parole,* 541 F.2d 938, 944 (2d Cir.1976).

### III.

In this action Bialkin challenged primarily two of the commission's determinations: his offense severity classification, and his release date beyond the guideline. As to the former, relevant here are the severity categories of "low" and "low moderate". Examples of "low" severity offenses include simple possession of illicit drugs, gambling law violations where there is no managerial or proprietary interest, and property offenses such as theft, tax evasion, and simple possession of stolen property, involving less than $2,000. "Low moderate" offenses include possession of cocaine with intent to distribute, gambling law violations where there is a managerial or proprietary interest in a small scale operation, immigration law offenses, and property offenses such as forgery, fraud, embezzlement, interstate transportation of stolen or forged securities, and receiving stolen property with intent to resell, involving less than $2,000. 28 C.F.R. § 2.20 (1982).

■ The commission classified Bialkin's offense as "low moderate" based on a number of factors. Although "simple possession" of stolen property is generally a "low" severity offense, possession of traveler's checks, the commission reasoned, "is more like securities which is a low moderate offense." Since some statutes do classify traveler's checks as securities, *see, e.g.,* 18 U.S.C. § 2311 (1976), this classification is not unreasonable. Further, ever since the inception of the guidelines in 1973 the commission has rated any offense involving a stolen negotiable instrument no less than "low moderate", and, after the decision in this case, the commission codified this practice. 47 Fed.Reg. 56,334, 56,338 (December 16, 1982).

Although the district court thought that the guidelines "clearly indicate" that possession of stolen traveler's checks should be classified as "low" severity, the matter is not so clear to us. "Simple" possession of stolen property worth less than $2,000 in value is classified as "low" severity. "Simple" implies without additions or modifications; not combined or compound. Webster's Third New International Dictionary 2121 (1971). Unlike a car or an appliance, for example, stolen traveler's checks have no intrinsic value unless negotiated or resold. This characteristic compounds the actual possession of stolen checks so that impliedly and realistically the offense is not "simple" possession, but possession with intent to resell. Therefore, we think it was within the commission's discretion to classify this offense as "low moderate" by analo-

gizing it to a securities offense rather than to a simple property offense. *See* 18 U.S.C. § 4203; 28 C.F.R. § 2.20, General Notes B and C; 28 C.F.R. § 2.21(b)(1) (1982).

## IV.

The district court also held that the commission abused its discretion by setting a parole date five months above the range indicated by the applicable guideline. When setting the date of expected parole, the commission may depart from its guidelines for "good cause", 18 U.S.C. § 4206(c); 28 C.F.R. § 2.20(c) (1982), a concept that includes any "especially aggravating or mitigating circumstances in a particular case". 28 C.F.R. § 2.20(d) (1982); *see Priore v. Nelson,* 626 F.2d 211, 216 (2d Cir.1980). In this case the commission set a release date five months above the guideline's range because (1) this was Bialkin's seventh conviction in 15 years involving check or stock fraud; and (2) the new offense occurred less than three months after his release on parole.

However, the district court held that, in reaching this decision, the commission had imposed a double penalty because it had "relied on the same factors in determining petitioner's Guideline range as it did in deciding to go above the Guidelines." According to the court, "the Commission presumably considered petitioner's previous record when it assigned him a salient factor score of '3'". The salient factor calculation, however, incorporated Bialkin's prior convictions only to the extent of four; his additional three convictions had no effect on Bialkin's salient factor score of "3".

In *Alessi v. Quinlan,* 711 F.2d 497 (2d Cir.1983), the parole commission had also fixed a release date beyond the guideline range. At issue was whether all of the aggravating factors relied upon by the parole commission were included in the "Greatest I" severity rating and were therefore unavailable to support a release date beyond the applicable guideline. We held:

> The aggravating factors cited by the Commission demonstrate that Alessi's criminal conduct was far more egregious than what was necessary to warrant a "Greatest I" severity rating. It is hardly irrational for the Commission to conclude that Alessi, whose crime involved kilograms of heroin, should be confined longer than a drug dealer who has distributed 51 grams of heroin.

711 F.2d at 500.

■ Similarly, it was not irrational for the commission to conclude that Bialkin, whose record included seven convictions, should be confined longer than a felon whose record included only four convictions, the minimum number needed to receive the lowest salient factor for convictions. Furthermore, we think the commission properly considered other appropriate aggravating factors in Bialkin's case, including the nature, frequency, severity and similarity of his offenses as well as the proximity of the current offense to prior offenses. *See Stroud v. U.S. Parole Commission,* 668 F.2d 843, 846 (5th Cir.1982). Thus, contrary to the district court's conclusion, the commission was not precluded from considering the number, nature, and frequency of Bialkin's prior offenses as well as the close proximity of his most recent offense to his prior release on parole.

■ The district court also concluded that since Bialkin's latest offense, possession of stolen traveler's checks, "does not strictly involve any fraud on petitioner's part", it was not similar to his earlier check and stock fraud offenses. In so ruling, however, the district court impermissibly substituted its own judgment for that of the commission. *Zannino,* 531 F.2d at 691. Regardless of whether we might agree with the commission's evaluation of the pattern of Bialkin's offenses, there nevertheless is a rational basis for concluding that his possession of stolen traveler's checks was sufficiently similar to stock or check fraud to be a relevant factor in fixing a parole date beyond the guidelines. Supported by such a rational basis, its decision must be upheld. *Staege,* 671 F.2d at 268.

Further, after reopening its original decision, the commission was not prevented from reaching a decision above the new guideline, even though it initially had decided not to exceed the guideline originally fixed. *Arias v. U.S. Parole Commission,* 648 F.2d 196, 200–01 (3d Cir.1981). In *Arias,* as in the case before us, the initial decision not to go above the guideline was attributable to the fact that the presumptive parole date indicated by the guideline was, in the commission's judgment, a proper release date under all the circumstances. Thus, it had no reason initially to consider whether a decision outside the guideline was warranted. When on reconsideration the commission raised Arias's salient factor score, thereby decreasing the guideline range, the court held it was neither unfair or unconstitutional for the commission to then set a presumptive parole date outside the guideline. *Id.* at 200–01. Similarly here, when on reconsideration the commission lowered Bialkin's offense severity rating, thereby decreasing his guideline range, the commission could fix a release date outside the guideline.

Finally, we find no evidence in the record to support Bialkin's assertion that the recommendation by the hearing examiners to the commission was in any way vindictive or malicious.

We conclude that the district court erred in finding that the commission had abused its discretion on reconsideration of Bialkin's presumptive release date. On this record neither his "low moderate" offense severity classification nor his release date beyond the guideline range was irrational. Accordingly, the judgment of the district court is reversed, and the case is remanded with a direction to dismiss the petition.