732 F.2d 1043
 Joseph TIMPANI, Petitioner-Appellant,
v.
G.H. SIZER, as Warden of the Federal Correctional Facility,
Danbury, CT and Benjamin F. Baer, as Chairman of
the U.S. Parole Commission, Respondents-Appellees.
 No. 592, Docket 83-2295.
 United States Court of Appeals,
Second Circuit.
 Submitted Jan. 19, 1984.
Decided Jan. 20, 1984.
Opinion March 28, 1984.
 
 Lenihan & Castillo, Albany, N.Y. (Gaspar M. Castillo, Jr., Leonard W. Krouner, Albany, N.Y., on brief), for petitioner-appellant.
 Alan H. Nevas, U.S. Atty., for the D. Conn., New Haven, Conn. (Kurt F. Zimmermann, Asst. U.S. Atty., New Haven, Conn., on brief), for respondents-appellees.
 Before FEINBERG, Chief Judge, VAN GRAAFEILAND and KEARSE, Circuit Judges.
 KEARSE, Circuit Judge.
 
 
 1
 Petitioner Joseph Timpani, a federal prisoner, appeals from a judgment of the United States District Court for the District of Connecticut, Ellen Bree Burns, Judge, denying his petition for a writ of habeas corpus on the ground that he was entitled to be released from prison on May 10, 1983, in accordance with the revised guidelines of the United States Parole Commission ("Commission"). On appeal, Timpani contends principally that the Commission acted arbitrarily and capriciously in giving him a presumptive release date of October 10, 1984, and that as thus applied the Commission's revised guidelines violate the constitutional prohibition against ex post facto increases in punishment. Finding no merit in any of Timpani's contentions, we affirm the judgment of the district court.[1]
 
 BACKGROUND
 
 2
 In early 1981, Timpani was convicted on one count of knowingly possessing, as a convicted felon, a firearm that had traveled in interstate commerce, in violation of 18 U.S.C.App. Sec. 1202(a)(1) (1976), and one count of knowingly possessing an unregistered sawed-off shotgun, in violation of 26 U.S.C. Sec. 5861(d) (1976). He was sentenced in March 1981 to concurrent prison terms of eighteen months on the first count and five years on the second count. Later in 1981, while serving this sentence, Timpani pleaded guilty to two counts of income tax evasion, in violation of 26 U.S.C. Sec. 7201 (1976). On the first such count he was sentenced to one year's imprisonment, to be served consecutively to the sentence for his firearms offenses, and assessed a committed fine of $10,000; on the second count, he was placed on two years' probation and assessed a $10,000 fine.
 
 
 3
 A. Calculation of Timpani's Presumptive Release Date Under the 1981 Guidelines
 
 
 4
 In September 1981, pursuant to 28 C.F.R. Sec. 2.12 (1980), Timpani appeared before a hearing panel of the Commission for his initial parole hearing, the purpose of which was to establish his presumptive parole release date. In establishing this date, the panel relied on the Adult Guidelines for Parole Decisionmaking contained in 28 C.F.R. Sec. 2.20 (1980) ("Guidelines"), which set presumptive release dates on the basis of (1) the offender's risk of parole violation and (2) the severity of his "offense behavior." Id. Sec. 2.20(b). The risk of parole violation was to be assessed on the basis of a number of factors such as the prisoner's record of prior convictions, narcotics dependence, and recent education or employment history. Id. Sec. 2.20. These factors were translated into a number called a "salient factor score," which served as an indicator of the likelihood that a prisoner would abide by parole conditions. See id. Sec. 2.20(e). The assessment of the prisoner's "offense behavior" severity depended on two components: (a) the seriousness of any offense behavior by the prisoner, and (b) the number of offenses involved.
 
 
 5
 Timpani's "salient factor score," which is not at issue on this appeal, was 6, or "Good." With respect to his "offense behavior," although each of the two judgments against Timpani convicted him of two offenses, the Commission has treated Timpani's case as though it involved a single firearms conviction (for possession of an unregistered sawed-off shotgun) and a single tax evasion conviction. Under the Guidelines' seven-category rating system, both Timpani's firearms offense and his tax evasion offense were rated "High Severity" (the fourth category) offenses. Id. Sec. 2.20. Had Timpani's offense behavior involved only a single offense, the combination of that "High Severity" offense and his salient factor score of 6 would have made applicable a range of incarceration of 20 to 26 months. See id. The Guidelines provided, however, that "[i]f an offense behavior involved multiple separate offenses, the severity level may be increased." Id. Sec. 2.20, General Note D. Since Timpani's overall offense behavior involved two "High Severity" offenses, the hearing panel ranked his overall offense behavior severity "Very High" (the fifth category of offense), thereby making the applicable range of incarceration 36 to 48 months. Concluding that the circumstances warranted the maximum period of incarceration within the applicable range, 48 months, the panel gave Timpani a presumptive parole release date of March 9, 1985.
 
 
 6
 B. The Commission's 1982 and 1983 Revisions in Offense Behavior Severity Ratings
 
 
 7
 Timpani had his next interim hearing in February 1983. In the meantime, the Commission modified its Guidelines and procedures affecting presumptive release dates in two pertinent respects. In June 1982, the Commission announced that it would change the Guidelines' severity rating for, inter alia, the offense behavior applicable to Timpani's firearm offense from "High" (category 4) to "Very High" (category 5). See 47 Fed.Reg. 27,570 (1982). These changes became effective on January 31, 1983. See 47 Fed.Reg. 56,334 (1982).[2] In addition, in May 1982, the Commission amended its Guidelines Applications Manual ("Rules Manual") to provide guidance to hearing panels "in assessing whether the severity of multiple offenses is sufficient to raise the offense severity level." Rules Manual at R31.[3] The revised manual contained a new chart, in which numerical values were assigned to each offense behavior severity level, and the overall severity level could be determined by totaling the numerical values of all of the prisoner's offenses.[4] For all but the two most serious categories of offense, it required three offenses in one category to raise the overall offense severity automatically to the next higher level.[5]
 
 
 8
 In connection with the revisions, the Commission announced that as to prisoners who had had their initial parole hearings before January 31, 1983, offense behavior severity ratings at all interim hearings held on or after January 31, 1983, would be calculated in accordance with the revised ratings, 47 Fed.Reg. 56,336 (1982), and that a "prisoner receiving a more favorable severity rating at th[e] time [the revised offense behavior severity rating is calculated] will have the revised rating retroactively applied. If the new rating is not more favorable, the previous rating will stand." Id.
 
 
 9
 C. Timpani's Review Under the Revised Guidelines
 
 
 10
 At Timpani's February 1983 statutory interim hearing, the hearing panel calculated a revised severity rating for Timpani's overall offense behavior. Using the old Guideline classifications, the panel treated both Timpani's firearms offense and his tax evasion offense as "High Severity" (category 4) offenses; using the new multiple-separate-offense chart in the revised Rules Manual, the panel concluded that the combination of two such offenses would not increase Timpani's overall offense behavior severity rating. The panel thus lowered the overall severity rating for Timpani's offense behavior from "Very High" (the severity rating applied at Timpani's 1981 hearing) to "High," which made applicable a range of incarceration of 20 to 26 months. The hearing panel recommended a presumptive parole release date of August 17, 1983.[6]
 
 
 11
 The Regional Commissioner rejected the recommendation of the hearing panel. He ruled that in determining whether the revised offense behavior severity ratings should be applied retroactively, it was necessary to refer to the revisions to assess both the individual offense severity rating and the multiple offense severity rating. If, taking into account the revised ratings for each component, the overall severity rating under the revisions was lower than the prisoner's overall rating under the old Guidelines, the revisions would be applied retroactively; if the overall rating under the revisions was higher or the same, the revisions would not be applied retroactively.
 
 
 12
 In Timpani's case, the Regional Commissioner determined that the overall offense behavior severity rating would remain the same under the revisions. Although Timpani's tax evasion offense remained within the "High Severity" category, the amended Guidelines placed Timpani's firearm offense in the "Very High Severity" category. Since the offense behavior severity rating for multiple offenses is at least as high as the highest severity rating assigned to any of a prisoner's separate offenses, Timpani's overall behavior offense severity rating was "Very High"--the same rating given at his initial hearing. Thus, the revisions were not applied to him, and the applicable range of his incarceration remained 36 to 48 months.
 
 
 13
 The Regional Commissioner found further that a decision outside the Guidelines, see note 6 supra, was not warranted. He awarded Timpani five months' credit for "superior program achievement," and arrived at a new presumptive parole release date of October 10, 1984. Timpani appealed, and on August 9, 1983, the Commission's National Appeals Board affirmed the decision of the Regional Commissioner for the reasons given by the Regional Commissioner.
 
 D. The Present Petition
 
 14
 In the meantime, in June 1983, Timpani filed a petition for a writ of habeas corpus in the district court, claiming that the Regional Commissioner had acted arbitrarily and capriciously in calculating his October 10, 1984 release date.[7] Timpani argued that his revised offense behavior severity rating should have been calculated as "High," and that thus his presumptive parole release date should have been no later than May 10, 1983, 26 months after he began serving the sentence on his firearms conviction. Because this date had passed, Timpani claimed that he was entitled to be released immediately.
 
 
 15
 The district court denied the petition on the ground that the Commission's actions were within the scope of its discretion. The court found that the Regional Commissioner's calculation of Timpani's offense behavior severity rating was consistent with the Commission's policy as to retroactive application of revised offense behavior severity ratings and concluded that the Regional Commissioner's interpretation of this policy was entitled to substantial deference.
 
 
 16
 This appeal followed.
 
 DISCUSSION
 
 17
 On appeal Timpani principally renews his contention that the Commission has acted arbitrarily and capriciously in calculating his presumptive parole release date and argues that the new designation of his firearms offense as a category 5, or "Very High Severity," offense has the ex post facto effect of increasing the length of his confinement. We find no merit in these contentions.
 
 
 18
 Congress vested in the Commission the sole power to grant or deny parole, Billiteri v. United States Board of Parole, 541 F.2d 938, 944 (2d Cir.1976); see 18 U.S.C. Sec. 4203(b) (1976), and instructed the Commission to promulgate rules and regulations establishing guidelines for exercise of these powers, 18 U.S.C. Sec. 4203(a)(1) (1976); Bialkin v. Baer, 719 F.2d 590, 592 (2d Cir.1983). Because the Commission has been granted broad discretion to determine parole eligibility, see 18 U.S.C. Sec. 4218(d) (1976), we will defer to the Commission's interpretation of its regulations unless that interpretation is unreasonable. Lieberman v. Gunnell, 726 F.2d 75 at 77 (2d Cir.1984); Bialkin v. Baer, supra, 719 F.2d at 593; Staege v. United States Parole Commission, 671 F.2d 266, 268 (8th Cir.1982).
 
 
 19
 At issue here are the Commission's interpretations of its 1982 and 1983 revisions of its regulations in coordination with its announced policy as to the retroactivity of those revisions. The announced policy was that the revisions would not be applied to a prisoner who had already had an initial presumptive release date determination unless the revisions would lead to a "more favorable severity rating." 47 Fed.Reg. 56,336. On its face, this statement is open to more than one interpretation. Timpani argues that it meant that such a prisoner was entitled to the benefit of any more favorable severity rating, even one that related to only one component of his overall offense behavior severity rating. The Commission's interpretation of its policy statement is that "more favorable severity rating" means the overall offense behavior severity rating, and that the determination as to whether the revisions produce a more favorable overall rating can be made only by applying the revised standards for both components--i.e., the individual offense seriousness factor and the number of offenses.
 
 
 20
 We find nothing unreasonable in the Commission's interpretation. It is entirely consistent with the language of the announcement. Moreover, we note that the Guidelines revision that became effective on January 31, 1983, had been announced in June 1982, shortly after the revised Rules Manual revisions were adopted. Thus, the timing of these announced changes supports the Commission's position that the revisions as to individual offense severity ranking and as to multiple offense severity ranking were intended to be coordinated. Since the Commission's interpretation that by "more favorable severity rating" it meant more favorable overall severity rating is not unreasonable, we must defer to that interpretation.
 
 
 21
 The Commission's application of its policy, as interpreted by it, to Timpani's case resulted in the conclusion that the revisions would not result in a more favorable overall offense behavior severity ranking; hence the revisions were not applied to Timpani. We find nothing in these actions that violated any of Timpani's rights. There was no violation of the ex post facto prohibition of the Constitution since Timpani was not disadvantaged by the revisions. See Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). Rather, the revisions did not affect Timpani at all since they were not applied to him; and had they been applied to him, they would have left his presumptive period of confinement unchanged.
 
 
 22
 We have considered Timpani's other contentions and find them also to be without merit.
 
 CONCLUSION
 
 23
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Because Timpani contended that his proper release date had passed and that he was entitled to immediate release, we issued our order of affirmance shortly after submission of the appeal and indicated that our opinion would follow
 
 
 [2]
 The January 31, 1983 revision also divided the category of most serious offenses (theretofore called "Greatest II") into two categories, giving eight categories in all, and labeled each category by number, see, e.g., note 4 infra, rather than by descriptive term such as "High." To facilitate comparison of the rankings of Timpani's offense behavior under the old and new Guidelines, we continue to refer to the former descriptive labels
 
 
 [3]
 The Commission states in its brief on appeal that these amendments also became effective on January 31, 1983. The district court found that they were "adopted on May 20, 1982," and Timpani relies on May 20, 1982, as the effective date. We have been unable to determine from the Federal Register or the Rules Manual itself the effective date of the manual revisions, but we note that the revised manual's listing of only seven, rather than eight, categories of offense severity, see note 2 supra, may indicate that the manual's revisions became effective before the January 31, 1983 effective date of the Guidelines revisions. In any event, we consider the discrepancy between the two posited effective dates to be immaterial since both dates preceded Timpani's February 1983 hearing
 
 
 [4]
 The numerical values set forth for the offense behavior severity categories were as follows:
 Severity Points
Category One 1/9
Category Two 1/3
Category Three 1
Category Four ("High Severity") 3
Category Five ("Very High Severity") 9
Category Six 27
Category Seven 45
 
 
 [5]
 The Guidelines continued to provide that "[i]f an offense behavior involved multiple separate offenses, the severity level may be increased." 28 C.F.R. Sec. 2.20, Ch. Thirteen, Subch. A.2. (1983). The proper coordination between this provision, which apparently had previously been viewed as a discretionary provision, and the guidance given in the Rules Manual, is not entirely clear
 
 
 [6]
 This date was three months beyond the 26-month maximum prescribed by the Guidelines. The Commission is allowed to make decisions outside of the Guidelines if it has "good cause" for so doing and states its reasons with particularity, 18 U.S.C. Sec. 4206(c) (1982); see 28 C.F.R. Sec. 2.20(c) (1983), or if it finds "aggravating" circumstances and informs the prisoner of them, 28 C.F.R. Sec. 2.19(c) (1983); see Lieberman v. Gunnell, 726 F.2d 75 at 77-78 (2d Cir.1984). In Timpani's case, the hearing panel gave no explanation for placing the recommended release date beyond that prescribed by the Guidelines
 
 
 [7]
 The Commission moved to dismiss the petition on the ground that Timpani had not properly exhausted his administrative remedies by obtaining a final ruling from the Commission's National Appeals Board. The district court rejected this contention on the basis that since the presumptive parole release date contended for by Timpani had passed, he was not required to exhaust his remedies further before seeking a writ of habeas corpus. We express no view on this ruling since the National Appeals Board decided Timpani's appeal before the district court ruled on the merits of Timpani's petition, thereby mooting the issue of exhaustion