**Philip RASTELLI, Petitioner,**

v.

**WARDEN, METROPOLITAN CORRECTIONAL CENTER, NEW YORK, NEW YORK; United States Department of Justice, Bureau of Prisons; and United States Parole Commission, Respondents.**

**No. 85 Civ. 0613 (EW).**

United States District Court, S.D. New York.

Nov. 23, 1985.

6. *Evans Transportation Co. v. Scullin Steel Co.*, 693 F.2d 715, 718 (7th Cir.1982).

Stanley A. Teitler, New York City, for petitioner; Amy Adelson, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for respondents; William E. Simon, Jr., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner, Philip Rastelli, seeks a writ of habeas corpus, claiming that he was denied his constitutional right to due process of law in the revocation of his parole. This is petitioner's second request for a writ; the procedural posture of the case makes necessary a review of the background of the previous application, which was disposed of by Judge Sofaer, in an extensive opinion familiarity with which is assumed.[1]

### Background

Petitioner was convicted in 1976 of conspiracy to violate and violations of the Hobbs Act,[2] and of criminal restraint of trade under the Sherman Act.[3] On August

---

1. *See Rastelli v. Warden, Metropolitan Correctional Center,* 610 F.Supp. 961 (S.D.N.Y.1985). Upon Judge Sofaer's resignation as a United States District Judge, the matter was assigned to this Court.

2. 18 U.S.C. § 1951.

3. 15 U.S.C. § 1.

27, 1976, petitioner was sentenced to ten years' imprisonment, to run consecutively to a state criminal sentence of four years. On June 15, 1977, he was released from state confinement, and began serving his federal sentence. On April 21, 1983, Rastelli was mandatorily released from confinement, having served his sentence less the statutory good time allowance.[4] Under the mandatory release, Rastelli was "deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days," [5] and thus was subject to parole supervision through December 16, 1986.

After Rastelli's release he was the subject of surveillance by federal and state law-enforcement authorities. On August 16, 1984, Rastelli was arrested pursuant to a warrant issued at the request of his parole officer, Victor Zaccheo.

### The First Revocation Proceeding

The Parole Commission charged Rastelli with two violations at his first parole revocation proceeding: (1) that he associated with individuals *with criminal records,* and (2) that he associated with individuals *engaged in criminal activity.* The first alleged that Rastelli had knowingly associated with seven persons with criminal records on ten occasions.[6] The second alleged that Rastelli had associated with individuals, both named and unnamed, on February 16 and 17, 1984, who after leaving Rastelli's place of employment were seen counting policy slips in a candy store located in the same neighborhood.[7] After a formal hearing, at which Rastelli was represented by counsel, the hearing examiners found that Rastelli had violated his parole in that he had on ten occasions associated with persons having criminal records; they made no findings as to the second charge. The examiners recommended that Rastelli's mandatory release be revoked and that he be imprisoned until the expiration of his term, with credit for the time on mandatory release.

The recommendations of the examiners were sustained by the Regional Commissioner and the National Commissioners, acting as an "original jurisdiction" review panel.[8] Although the National Commissioners expressly found that "[r]eparole guidelines indicate a range of 0–9 months to be served before re-release," [9] the Commissioners decided to exceed the guidelines,[10] and upheld the recommendation that Rastelli be reimprisoned for the remainder of his term.

During the pendency of his administrative appeal to the full Parole Commission, Rastelli filed a petition for writ of habeas corpus in this district. The petition was heard by Judge Sofaer who, on June 9, 1985, entered an order granting the writ.[11] Judge Sofaer affirmed only one of the five

---

**4.** *See* 18 U.S.C. § 4161 (good time allowance is ten days per month for sentences of ten years or more); 18 U.S.C. § 4163 (mandatory release at "expiration of [the] term of sentence less the time deducted for good conduct").

**5.** 18 U.S.C. § 4164.

**6.** Such knowing association is a violation of 28 C.F.R. § 2.40(a)(10).

**7.** This conduct was alleged to be a violation of 28 C.F.R. § 2.40(a)(6), which provides in pertinent part: "The parolee shall not violate any law, nor shall he associate with persons engaged in criminal activity."

**8.** Under 28 C.F.R. § 2.17(a), the Regional Commissioner "may designate certain cases for decision by a quorum of Commissioners ... as original jurisdiction cases. In such instances,

he shall forward the case with his vote, and any additional comments he may deem germane, to the National Commissioners for decision." Original jurisdiction appeals are subject to review by the full National Parole Commission, composed of the National and Regional Commissioners, pursuant to 28 C.F.R. § 2.27.

**9.** Notice of Action, 1/16/85, Exhibit K to Affidavit of Henry Sadowski, 5/16/85, at 2.

**10.** The regulations promulgated by the Commission specifically provide that "[w]here the circumstances warrant, decisions outside of the guidelines (either above or below) may be rendered." 28 C.F.R. § 2.20(c).

**11.** *Rastelli v. Warden, Metropolitan Correc. Center,* 610 F.Supp. 961 (S.D.N.Y.1985). Respondents have appealed in part from the decision of Judge Sofaer; that appeal is presently pending.

charges on which Rastelli had been convicted. This charge alleged that on April 28, 1984, Rastelli met with James Napoli, Sr., at the Hi-Way Lounge, a Brooklyn restaurant. Rastelli, who had been incarcerated at the Lewisburg Correctional Institution at the same time as Napoli, admitted both the meeting with Napoli and his knowledge of Napoli's criminal record. On this ground, Judge Sofaer found that Rastelli had committed only a single administrative violation of his parole, to wit, the meeting with Napoli; however, he further held that the Parole Commission had acted arbitrarily and capriciously, and had abused its discretion in deciding to exceed its own guidelines of nine months upon recommitment and to incarcerate Rastelli for the remainder of his original sentence, a period in excess of two years.[12]

With respect to the other charges upheld by the Parole Commission, Judge Sofaer found that the Commission had not sustained the burden of proving that Rastelli associated with individuals having criminal records. Judge Sofaer found as to three of the associations charged that Rastelli's alleged associates did not in fact have criminal records. In addition, with respect to one Gabriel Infanti, with whom Rastelli was alleged to have met briefly on one occasion, Judge Sofaer found that the contact was "incidental" or "fleeting," and therefore not an association within the meaning of the regulation establishing the violation.[13]

Having held that Rastelli, who had been confined for nearly ten months at the time of the order, was not subject to incarceration for more than nine months, Judge Sofaer granted the writ, but stayed its issuance "for thirty days, during which time the Commission must commence a new parole revocation proceeding, or seek to justify his continued detention on some legally sufficient basis." [14]

*The Second Revocation Proceeding*

On June 28, 1985, within the thirty-day period specified in Judge Sofaer's order, the Commission, by a Notice of Action, commenced a new parole revocation proceeding. The Commission specified seven charges of violation against Rastelli. The first concerned the same April 28, 1984, meeting with James Napoli, Sr., which had been considered at the November 1984 hearing and affirmed by Judge Sofaer. This time, the Parole Commission broadened the charge by alleging that Rastelli had violated his parole by associating with a person *engaged in criminal activity*, in violation of 28 C.F.R. § 2.40(a)(6). In all other respects, the factual foundation of the charge was identical to that previously sustained. The second and third charges concerned association *with persons engaged in criminal activity*, and recharged associations with Salvatore Vitale and Gabriel Infanti. Rastelli had been charged at the earlier hearing with violating his parole by meeting with the two at a diner in Queens on June 5, 1984, and also by meeting again with Salvatore Vitale on June 12, 1984. These same meetings were alleged in the new charges as associations with persons *engaged in criminal activity*, rather than, as under the first petition, associations with persons *having criminal records*.[15]

The Parole Commission also advanced four new charges at the second hearing. These alleged that "in or about May 1984, you sent a list of persons to be made members of a criminal organization to Anthony Salerno and Matthew Ianniello," and that "in or about May 1984, you had a conversation with Anthony Corallo." Each of these factual allegations charged two separate and distinct violations of parole: first, that Rastelli had associated with Salerno, Ianniello, and Corallo, who were *engaged in criminal activity;* and second, that Rastel-

---

12. 610 F.Supp. at 978–79.

13. *See* 610 F.Supp. at 974–78.

14. 610 F.Supp. at 980.

15. *See* Notice of Action, 6/28/85, Exhibit 2 to Affidavit of Henry Sadowski, 10/9/85, at 1.

li had associated with Salerno, Ianniello, and Corallo, who *had criminal records.*[16]

*The Hearing of July 2, 1985*

Rastelli was given a hearing on these new charges at his place of confinement, the New York Metropolitan Correctional Center, on July 2, 1985, before Parole Commission Hearing Examiners Krueger and Santella. Two witnesses testified in support of the charges: Patrick Marshall, an FBI Special Agent in New York and the FBI's coordinator of Bonanno organized crime family investigations, and Victor Zaccheo, who had been Rastelli's Probation Officer during the period of Rastelli's release.

Agent Marshall presented background information upon which he expressed his belief that Rastelli was the boss of the Bonanno family of the Cosa Nostra organization in New York, which consisted of five families each headed by a boss; in this connection he identified numerous documents, including testimony from previous criminal trials in which Rastelli was not a defendant, and documents based upon Congressional investigations of organized crime conducted in 1964 and 1983 in which Rastelli's alleged criminal activities were portrayed. Marshall also testified, based upon reports by and conversations with other FBI agents, as to surveillances of

Rastelli following his release in which he, Marshall, had not participated.[17]

With respect to two of the first three charges, concerning association with Infanti and Vitale, Agent Marshall testified from reports compiled by other agents, who did not testify at the hearing but who had actually conducted the surveillances. He testified that the reports indicated that Rastelli had been seen meeting at the Fresh Ponds Diner with both Vitale and Infanti.[18] On cross examination, he acknowledged that he had no information showing that any illegal acts had been committed by Infanti, Vitale, or petitioner at or around the time of the meetings alleged.[19]

Agent Marshall also testified about a tape recording upon which the Commission relied to sustain the charges of sending a list of persons to be made members of the Bonanno family and of association with Salerno, Ianniello, and Corallo. The original tape recording was not played at the hearing, despite a request by counsel; the government provided a purported transcript of the taped conversation, to whose admission into evidence counsel objected.[20] According to the typewritten transcript, the participants were Anthony Salerno, Matthew Ianniello, and James Ida, all claimed by the government to be connected with the Genovese family of the Cosa Nostra. Agent Marshall testified that he had

---

16. *Id.* at 1–2.

17. Transcript of Hearing, 7/2/85, at 21–37. The Court notes that the hearing was recorded on tape rather than stenographically transcribed, and the parties have submitted two different versions of the transcript. For the purposes of this opinion, the Court refers to the government's transcript, cited hereinafter as "Tr."

18. Tr. at 30–35.

19. Tr. at 100–04.

20. Rastelli's counsel, Stanley Teitler, objected to the introduction of the transcript:

MR. TEITLER: Mr. Krueger, the evidence is not the transcript, the evidence is the tape. Could we ask that the tape be played and have the agent identify who's talking on the tape? Tr. at 40. The tape was not played during the direct examination of Agent Marshall. Upon

renewal of the request on cross-examination, the following colloquy took place between Mr. Krueger, the Hearing Examiner, and Mr. Teitler, counsel for Rastelli.

MR. KRUEGER: Oh, well go ahead, cross examine.

MR. TEITLER: Tape recorder?

MR. KRUEGER: *No, we're not playing the tape. Cross-examine him on the transcript.* Tr. at 50 (emphasis added). As Rastelli's counsel pointed out in summation, "[t]hat tape is not even in evidence; only a transcript is." Tr. at 150.

It is now asserted that, following the hearing, one of the hearing examiners, Mr. Krueger, listened to the tape "and is satisfied that the transcript is a reasonable portrayal the [sic] conversation as it took place between Salerno, Ianniello and Ida." Revocation Summary, Exhibit 6 to Affidavit of Henry Sadowski, 10/9/85, at 4.

listened to the tape recording, and had identified only the voice of Anthony Salerno. The other voices he could not identify, but he testified that other agents had told him that they were the voices of Ianniello and Ida.[21] It is undisputed that Rastelli was not a participant in the recorded conversation. Nonetheless, Agent Marshall testified to his understanding of the conversation purportedly set out in the transcript, which in his opinion indicated that Rastelli had sent to Salerno for Salerno's approval a list of people to be made members of the Bonanno family of the Cosa Nostra, and he further opined that the transcript of the tape showed that Rastelli had, in or about May 1984, associated with Anthony Corallo.[22]

The sole direct testimony offered to support the first charge against Rastelli, that of associating with James Napoli, Sr., who was alleged to be engaging in criminal activity, came from Victor Zaccheo. Zaccheo testified that on April 28, 1984, he and another Probation Officer observed Rastelli meeting with Napoli, a meeting which Rastelli had admitted at the first proceeding. On cross-examination, Zaccheo stated that he had "no idea" of what criminal activity, if any, Napoli had been engaged in at that time.[23]

In sum, the only direct evidence against Rastelli at the second proceeding consisted of his admission that he had met with Napoli, supported by the observations of Zaccheo. The other evidence was the hearsay testimony by Marshall as to the meetings between Rastelli and Vitale and Infanti at the Fresh Ponds Diner, the typewritten transcript of the tape recording, not played at the hearing, and Marshall's interpretation of the conversation set forth in the transcript, based upon what the Hearing Examiner called his "specialized knowledge." [24] This testimony was supplemented by the documents as to which Marshall testified, of which he had no personal knowledge, and which purported to show that Rastelli had been involved with the Bonanno family of the Cosa Nostra since at least 1964. Upon this hearsay material, the Hearing Examiners upheld all seven charges against Rastelli, upon a finding that "it is more likely than not and the evidence sustains that you were associating with persons involved in criminal activity ... and having a criminal record." [25] The examiners recommended that Rastelli's parole be revoked, that he be reimprisoned for the remainder of his original sentence, and that his case be accorded "original jurisdiction" treatment by the Regional Commissioner, which involved *de novo* review of the hearing examiners' findings by the Regional Commissioner and a panel of his colleagues, members of the National Parole Commission. On August 15, 1985, the National Commissioners affirmed the findings of the hearing examiners that Rastelli was in association with (1) persons engaged in criminal activity, and (2) persons with criminal records, and further found that such violations amounted to

21. Tr. at 38–39.

22. Tr. at 38–44. The section of the conversation upon which the government relies most heavily contains, according to the transcript, the following interchange:

> IANNIELLO: Rusty sent this here, wanted to know if it's okay to make these groups. He gave me a list.
> SALERNO: (UI) He's got nothing to do with (UI).
> IANNIELLO: He's got something ... can't you ... he don't like that (UI).
> SALERNO: I don't even know what to do with this guy.
> IANNIELLO: Ah, listen
> SALERNO: I (UI) don't recognize these guys. He's too tired and then he want to have

> a meeting. But, I didn't want to meet, Paul didn't want to meet. Tony Ducks [Corallo] didn't want to meet and Tony Ducks told Rusty he said listen, he said take care of your family and then we'll talk about the Commission. He wants to be on the Commission ... but too much young guys. They got a crew of 80 guys (PH) like that. How could we meet ... I don't know the guys number one, number two, I don't know.

Government's Memorandum of Law in Opposition, at 23.

23. Tr. at 130.

24. Tr. at 41.

25. Tr. at 156.

"new criminal conduct ... because [he] fostered an organization involved in professional criminal activity." The findings were referenced to the transcript of the taped conversation which allegedly took place among Anthony Salerno, Matthew Ianniello, and James Ida, along with "stipulated source documents."[26] Rastelli took a further administrative appeal to the full National Parole Commission, and during the pendency of that appeal moved for enforcement of Judge Sofaer's June 9 order.

### Review of the Parole Commission's Action

Under Judge Sofaer's order the writ was to issue unless within thirty days from the entry of his order the Commission began "a new parole revocation proceeding, or [sought] to justify his continued detention on some legally sufficient basis."[27] This the Parole Commission did, in that within thirty days of June 9 it brought new charges of parole violation against Rastelli, already referred to, and afforded him a hearing on those charges.

Petitioner contends that the proceeding conducted with respect to the new charges did not comport with the requirements of due process, in that there was an absence of reliable evidentiary support for the revocation of parole and that he was denied the right to a fundamentally fair hearing. The Court therefore treats Rastelli's motion as a renewed petition for a writ of habeas corpus, and reviews the Commission's determination on that basis. Since, on October 31, 1985, the full National Parole Commission affirmed the prior decision of the National Commissioners, Rastelli has ex-

hausted his administrative remedies, and the matter is ripe for review here.[28]

In undertaking this review, this Court is mindful that the Parole Commission "is vested with the broadest discretion consistent with due process to act upon *reliable* evidence in revoking parole,"[29] and also that the Court's power to review is extremely limited:

> The appropriate standard for review of the commission's decisions is whether there has been an abuse of discretion. This means that a court may not substitute its own judgment for that of the commission, but may consider only whether there is a rational basis for the commission's decision.[30]

For the reasons set out below, the Court holds that the Hearing Examiners and the Parole Commission had no rational basis for their findings as to the charges against Rastelli, and finds that they violated his right to due process of law required by the United States Constitution.

As the Court's summary indicates, the record of the hearing afforded Rastelli on July 2, 1985, reveals a veritable catalogue of serious error. The Court holds that the evidence presented at the hearing, far from proving each of the charges by a preponderance of the evidence, did not provide a rational basis for sustaining any of the charges brought against Rastelli.

■ With respect to the first three charges, of association with Napoli, Vitale, and Infanti, each of whom was alleged to be engaged in criminal activity, it suffices to note that no evidence whatever was introduced, either by testimony or through documents, of any criminal activity engaged in by these three individuals at any

---

26. Notice of Action, 8/15/85, Exhibit 7 to Affidavit of Henry Sadowski, 10/9/85, at 2.

27. *Rastelli,* 610 F.Supp. at 980.

28. The Court notes that Judge Sofaer's opinion of June 9 held that under 18 U.S.C. § 4203(c)(4) any appeal to the full National Parole Commission in original jurisdiction cases must be decided within thirty days. Under this holding, from which respondents have taken an appeal, Rastelli had exhausted his remedies before the filing of the present motion. Because, in any event, the decision of the National Commission is now final, the Court does not reach the issue of the time limit for decision of parole revocation appeals in original jurisdiction cases.

29. *United States ex rel. Sperling v. Fitzpatrick,* 426 F.2d 1161, 1163 (2d Cir.1970).

30. *Bialkin v. Baer,* 719 F.2d 590, 593 (2d Cir. 1983) (citations omitted).

time on or about the dates of the alleged associations. Agent Marshall did testify that each of the three was known by the government to be a member of an organized crime family; at oral argument before this Court on the present motion, the government took the position that membership in a criminal organization, without more, is criminal activity within the meaning of the Parole Commission's regulations.[31] While the Commission's interpretations of its own regulations are entitled to deference unless clearly unreasonable,[32] the Commission has offered no justification for its view that a finding of criminal activity may be predicated upon a mere showing of membership in an organization believed by enforcement authorities to be engaged in a criminal enterprise. The record in this case provides no rational basis for the Commission's findings on charges 1(a), 1(b), and 1(c), and accordingly they may not stand.

■ The remaining charges upon which it was sought to revoke Rastelli's parole concerned alleged associations with Anthony Salerno, Matthew Ianniello, and Anthony Corallo. Despite surveillance by federal and state enforcement authorities during Rastelli's parole release, the only evidence offered in support of each of these charges was the transcript of the taped conversation which allegedly took place among Salerno, Ianniello, and James Ida concerning a list of prospective organized crime members allegedly sent by Rastelli. This Court, during the argument of instant application, listened to the original tape recording together with counsel representing the petitioner and the Commission and, as then noted, found that with the exception of half a dozen words scattered throughout the five-minute conversation, the tape is utterly unintelligible, and consists of "blurred sounds and voices."[33] This procedure was not followed at the revocation

hearing before the examiners on July 2, at which the original tape was not played. Rastelli's counsel objected at the hearing to the admission of the transcript of the recording,[34] and placed in issue the sufficiency of the voice identification which purportedly authenticated the tape. Under these circumstances, the refusal of the Hearing Examiner to play the tape at the hearing, and to permit exploration of the issues of authenticity and audibility, was an abuse of discretion and was substantially prejudicial to petitioner's right to attack the evidence as untrustworthy and unreliable.[35]

■ Even if, however, the admission of the tape and the transcript had been proper, reliance on the tape as the sole evidence in support of four of the seven charges was egregious error. The government does not contend that Rastelli participated in the conversation recorded, and thus everything contained on the tape was hearsay as to him. Agent Marshall, the only witness who testified to the authenticity of the tape, could identify only one of the recorded voices. The other voices were unknown to him, but he testified as to what he was told by other agents as to who the other alleged participants were. Moreover, no corroboration of any kind was offered to support the allegation of the existence of a list of candidates for admission to a criminal organization, or that such a list had been sent by Rastelli. With respect to the charges concerning association with Corallo, the evidence was even less reliable, consisting as it did of a hearsay statement recounting a conversation between two parties who were not participants in the taped conversation. The only support for the charge that Rastelli associated with Corallo was the alleged statement, on an inaudible tape, by someone identified as Anthony Salerno that someone named Tony Ducks, said to be Corallo, not present, had had a

**31.** *See* Transcript of Argument, 10/15/85, at 63.

**32.** *See Timpani v. Sizer*, 732 F.2d 1043, 1047 (2d Cir.1984); *Lieberman v. Gunnell*, 726 F.2d 75, 77 (2d Cir.1984).

**33.** Hearing Transcript, 10/22/85, at 6.

**34.** *See supra* note 20.

**35.** *Cf. United States v. Chiarizio*, 525 F.2d 289, 293 (2d Cir.1975); *United States v. Bryant*, 480 F.2d 785, 790 (2d Cir.1973).

conversation, at a time and place not specified, with someone named Rusty, identified as Rastelli, who was also not a participant. This was hearsay run riot.

While the Supreme Court has acknowledged that the admission of hearsay evidence in parole revocation hearings is not *per se* a due process violation,[36] the admission of "unsubstantiated or unreliable hearsay as substantive evidence at revocation hearings ... would certainly eviscerate the safeguards" the Court has created.[37] Although parole revocation hearings are concededly intended to be informal proceedings in which "the full panoply of rights due a defendant" in a criminal prosecution do not apply,[38] the admission of entirely unsubstantiated double and triple hearsay as the sole foundation for a finding of parole violations crosses the line which separates informality from irrationality.

The National Parole Commission, on final administrative appeal from the Commission's determination, compounded the error by relying in large measure upon the transcript, which purported to reflect the contents of what this Court has found to be an utterly unintelligible recording, for its finding that Rastelli "fostered an organization involved in criminal activity." [39] In making this finding, the Commission stated it was "based on information discussed with you at the hearing which included the conversation between [sic] Anthony Salerno, Matthew Ianniello and James Ida on May 22, 1984." [40] Thus, the National Parole Commission relied not only on an unintelligible tape recording, but on double and triple hearsay in reaching its conclusion. The tape recording, even if audible and intelligible, would not have provided a rational basis for Rastelli's conviction on charges 1(d), 1(e), 2(a), and 2(b).

■ As an independent matter, apart from the lack of a rational evidentiary basis for the Hearing Examiners' findings, the Court is persuaded that Rastelli was denied his right to the objective judgment of "a neutral and detached' hearing" officer which the Supreme Court has said is one of the "minimum requirements of due process" in the context of parole revocation.[41] This aspect of the case has had the Court's most concerned consideration. A hearing officer functions in a quasi-judicial capacity, making factual determinations in his recommendation to the Commission for final action. Here, a word by word and intensive study of the entire record, which included listening to the inaudible tape, leaves the Court with the settled and firm conviction that the Hearing Examiners did not conduct the hearing with the required objectivity, but to the contrary displayed a result-oriented attitude favorable to the charges. In this connection, three examples taken from the hearing record will suffice. In the first instance, Examiner Krueger interrupted cross-examination of Agent Marshall by Rastelli's counsel, directed to establishing when the Parole Commission first became aware of the charges it had brought against Rastelli, to declare:

> MR. KRUEGER: Mr. Teitler, I would venture to guess—as you know, Mr. Rastelli was mandatorily released from his ten-year sentence—I would venture to guess that if the Commission had had it in its power to prohibit him from being released from custody in 1983, the Commission would have done so.[42]

**36.** *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 & n. 5, 93 S.Ct. 1756, 1759–60 & n. 5, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972).

**37.** *Egerstaffer v. Israel*, 726 F.2d 1231, 1235 (7th Cir.1984); *see also Taylor v. United States Parole Comm'n*, 734 F.2d 1152, 1155–56 (6th Cir.1984).

**38.** *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

**39.** Notice of Action, 10/31/85, at 1.

**40.** *Id.*

**41.** *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972).

**42.** Tr. at 58.

When, having elicited from Agent Marshall the information that he did not know what illegal activity James Napoli had engaged in which formed the basis for charge 1(a), Rastelli's counsel moved for dismissal of that charge, the following colloquy took place:

MR. TEITLER: Your Honor, based on the agent's testimony, I submit that the charge 1(a) be dismissed.

MR. KRUEGER: We'll offer other testimony on that. We'll offer other testimony. There's only one witness here.

MR. TEITLER: You said we'll offer. Are you offering testimony?

MR. KRUEGER: No, not me. There will be other testimony.[43]

Similarly, when Rastelli's counsel questioned whether the Commission was seeking to introduce evidence connected with indictments presently pending against Rastelli, Examiner Krueger interjected "We intend not to. We intend not to bring those indictments on the record." [44]

These statements indicate much more than a colloquial use of the editorial "we." Indeed, the interchanges offer in brief what the hearing transcript as a whole makes clear, that the presiding Hearing Examiner, Mr. Krueger, forfeited his objectivity and became an advocate for one of the contending parties.[45] Recognizing that "[t]he officer directly involved in making recommendations cannot always have complete objectivity in evaluating them," [46] the Supreme Court has said that separation of the investigative and prosecutorial functions from the fact-finding function is a basic requisite of due process in the revocation of parole. When an individual's liberty is at stake, the requirement of an independent fact-finder, capable of evaluating all the evidence, and only the evidence, in coming to a determination is a fundamental element of our concept of fairness, part of "the very essence of a scheme of ordered liberty." [47] Where, as here, the neutrality and detachment of the fact-finder have been abandoned, the rudiments of due process are lacking. It goes without saying, and yet on consideration of the record in this case may bear repetition, that petitioner's background has not the slightest bearing on his right to a fair hearing. As Mr. Justice Frankfurther once observed, "It is a fair summary of history to say that the safeguards of liberty have frequently been forged in controversies involving not very nice people." [48]

For the foregoing reasons, the Court finds that petitioner was deprived of due process of law in the revocation of his parole. The writ will issue directing petitioner's release. The writ will be stayed for seventy-two hours to enable the respondents, in the event of an appeal, to apply

---

43. Tr. at 65.

44. Tr. at 46.

45. Examiner Krueger, rather than counsel for the Commission, conducted the questioning of the witnesses who testified in support of the charges. In doing so, the Examiner not only made extensive use of leading questions, but also occasionally elicited testimony concerning documents with which the witness testified he was not familiar:

MR. KRUEGER: I show you a partial index to hearings before the permanent subcommittee on investigations, and ask you to review them. Are you familiar with that?

MR. MARSHALL: No sir, I am not.

MR. KRUEGER: Would you review it and indicate to me what it represents?

MR. TEITLER: Objection, Your Honor. The witness has testified that he's not familiar with it.

MR. KRUEGER: He has it in his hand, (UI)

. . .

Tr. at 28. On cross-examination, Marshall acknowledged that he had first seen the document at issue on the day of the hearing. Tr. at 55; cf. Notice of Action, 8/15/85, Exhibit 7 to Affidavit of Henry Sadowski, 10/9/85, at 2 (decision of National Commissioners based in part upon "stipulated source documents").

46. *Morrissey v. Brewer*, 408 U.S. 471, 486, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484 (1972).

47. *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937).

48. *United States v. Rabinowitz*, 339 U.S. 56, 69, 70 S.Ct. 430, 436, 94 L.Ed. 653 (1950) (Frankfurter, J., dissenting).

for a further stay from the Court of Appeals.

So ordered.