OPINION OF THE COURT
April A. Newbauer, J.
Relator Michael Davis petitions for a writ of habeas corpus to vacate the parole violation warrant against him. Davis claims that his due process rights were violated because the Department of Corrections and Community Supervision failed to provide adequate notice of the charges against him; that the evidence at his preliminary hearing was improperly introduced in violation of the physician-patient privilege; and that he was not mentally competent at his preliminary hearing. Respondents maintain that none of the petitioner’s claims have merit and the writ should be dismissed.
Facts
On August 24, 2012, petitioner Davis was convicted in Oneida County Court of aggravated harassment and was sentenced to an indeterminate term of IV2 to 3 years. Davis also owed a period of one year, 10 months and five days of post-release supervision on a previous conviction. Davis was released to parole supervision on September 17, 2013. At that time, Davis agreed to adhere to certain conditions that the Department of Corrections and Community Supervision (DOCCS) imposed upon his release with the understanding that his failure to abide by these conditions would result in revocation of his parole.
*851 On November 4, 2015, DOCCS issued a parole warrant (No. 679335) for Davis’ arrest, declaring him delinquent as of October 7, 2015 for violating nine conditions of his release. DOCCS lodged the parole warrant on November 5, 2015. On November 9, 2015, Davis was served with a copy of the violation of release report and notice of violation. On November 12, 2015, a preliminary hearing was held before Hearing Officer Sharon Burnett. Of the nine charges, DOCCS chose to proceed under charge five of the violation of release report, alleging: “Davis violated rule number 8 of the rules governing his parole in that on 11-4 at Interfaith Medical Center at 1545 Atlantic Avenue, Brooklyn, New York, at approximately 11 a.m., he made verbal threats to staff.”[1]
Davis pleaded not guilty, and prior to taking testimony, counsel for the petitioner raised the issue of Davis’ mental capacity. The hearing officer ruled that absent any CPL 710.30 ruling, the preliminary hearing would proceed. The hearing proceeded with Parole Officer Gilmore offering testimony on this charge. Davis’ counsel objected, claiming that the charge was facially insufficient in that the language used did not specify the conduct at issue and, therefore, did not provide Davis with sufficient notice as a matter of due process. The hearing officer directed the testimony to conform to the charge, and indicated that Davis’ attorney could renew his objection after the testimony. Officer Gilmore testified that Davis was released to parole supervision on July 14, 2015 and that she assumed supervision of Davis on or about October 13, 2015. On October 20, 2015, Davis entered a residential psychiatric program at Interfaith Medical Center. No testimony was offered at the hearing as to the reason why DOCCS arranged for Davis to enter a treatment program, or anything concerning a course of prescribed treatment.
DOCCS called a second witness, Dr. Leon Valbrun, a psychiatrist and director of inpatient psychiatry at Interfaith Medial Center. The doctor testified that he was the supervisor for other medical staff assigned to treat Davis, and was *852 involved in some of the treatment team conferences concerning Davis. Counsel for Davis objected to the doctor testifying at the hearing claiming that any communications, observations and medical records were governed by HIPAA regulations, which prevent disclosure without written authorization. Counsel also argued that Valbrun’s testimony would violate doctor-patient confidentiality. Without attempting to ascertain the nature of the information to be disclosed, the hearing officer overruled the objections and invited counsel to “file a writ” if he believed Davis’ rights were violated.
Dr. Valbrun then testified in response to DOCCS’ counsel’s questions that on November 4, 2015, Davis was a patient at Interfaith Medical Center when he became agitated and stated he would “punch people, and he was going to damage people because we put him on 1-2-2 observation.” (TV at 11 [“1-2-2 observation” meant one staff member and one security guard were assigned to observe Davis at all times].) Following the threat, the New York City Police Department (NYPD) was notified. The doctor testified that he took the threat seriously because Davis had previously attacked a female patient the day before, fracturing her jaw and causing bruising to her face and body.
On cross-examination, Dr. Valbrun conceded that he was part of the treatment team and that he and members of the treatment team were attempting to meet with Davis when the threat was posed. Although there were security staff on the floor, Dr. Valbrun did not testify that they were close enough to overhear the conversation. The people standing in the hallway conducting the “meeting” were Dr. Valbrun, the attending psychiatrist and nursing staff. Davis was not approached by security staff and was allowed to move about freely at that point. In response to the threatening statements, the treatment team ordered Davis to be medicated.
Findings
Prior to commencing the preliminary hearing, counsel for Davis raised the issue of Davis’ mental competency. The hearing officer ruled that in the absence of a CPL article 730 ruling in any criminal case, the preliminary hearing would proceed. Her ruling ignored Matter of Polzella v Evans (128 AD3d 550 [1st Dept 2015]), in which the Appellate Division found that parolees have a due process right to competency in parole rev *853 ocation hearings on the same basis as in criminal trials.[2] (See also Matter of Lopez v Evans, 25 NY3d 199, 206-207 [2015].) Before the completion of submissions in this matter, however, the Office of the Attorney General notified the court that Davis’ counsel had sought a mental competency assessment under Criminal Procedure Law article 730 in an unrelated Kings County criminal case (2015KN067931). Therefore, counsel’s claim that the preliminary hearing should not have proceeded without a determination of Davis’ mental competency will be held in abeyance pending the outcome of the article 730 examination.
Executive Law § 259-i (3) (c) (iii) requires the Division of Parole to serve a parolee with notice of the time, place and purpose of a preliminary hearing within three days of executing the warrant. The purpose of the notice requirement is to afford a parolee an opportunity to prepare an adequate defense. (See People ex rel. Lawson v Warden, Rose M. Singer Ctr., 47 Misc 3d 816, 820-822 [Sup Ct, Bronx County 2015].) The violation of release report and notice of violation were timely served on November 9, 2015. On November 12, 2015, the preliminary hearing was conducted and concluded within the 15-day period. Davis was adequately informed that he was charged with violating rule No. 8 which states that the parolee will not behave in such manner as to violate the provisions of any law to which he is subject which provide for a penalty of imprisonment, nor will his behavior threaten the safety or well-being of himself or others. (See respondent’s affirmation in opposition, exhibit A, ¶ 8.) Based on the testimony as to the circumstances here, the charge was sufficient to adequately inform Davis with threatening the safety or well-being on another individual on the date in question.
Executive Law § 259-i (3) (c) (iii) requires only that a notice of preliminary hearing state “what conditions of . . . parole [or] conditional release . . . are alleged to have been violated, and in what manner.” While the notice did not state a definite person that Davis threatened, the language in the notice did not render Davis unable to prepare a meaningful defense. (See *854 Matter of Gonzales v New York State Bd. of Parole, 193 AD2d 356 [1st Dept 1993].) Given that Davis allegedly made the threats in person and was provided the date, time and location of the alleged threats made against staff members of the Interfaith Medical Center, this court finds that there is sufficient context to recall from Davis’ own memory the details his counsel claims are deficient and there is sufficient information to adequately prepare a defense. (Id. at 356-357; People ex rel. Fernandez v Warden, Sup Ct, Bronx County, Dec. 21, 2015, index No. 251343-15, slip op at 4.)
At a preliminary hearing pursuant to Executive Law § 259-i (3) (c) (iv), DOCCS must establish that there is probable cause to believe that the parolee has violated one or more conditions of his parole in an important respect. (See People ex rel. Korn v New York State Div. of Parole, 274 AD2d 439 [2d Dept 2000].) Only minimal inquiry is necessary to determine whether there is probable cause or reasonable grounds to believe that the parolee has committed acts which constitute a violation of his parole conditions. (See People ex rel. Calloway v Skinner, 33 NY2d 23, 31 [1973].) Evidence is sufficient for a finding of probable cause if it is credible and accurately supports that the parolee violated one or more of the conditions governing his or her release in an important respect. (See People ex rel. Vidal v New York State Div. of Parole, 16 Misc 3d 1109[A], 2007 NY Slip Op 51360[U] [Sup Ct, Bronx County 2007].) A finding of probable cause may rely on hearsay, which is permitted at preliminary hearings (see People ex rel. Fryer v Beaver, 292 AD2d 876, 877 [4th Dept 2002]), unless the charges so depend on inadmissible evidence as to violate due process. (See Rastelli v Warden, Metro. Corr. Ctr., N.Y., N.Y., 622 F Supp 1387 [SD NY 1985].)
But for the waiver of Davis’ privilege, the evidence DOCCS presented was sufficient to support a probable cause finding on charge five, rule No. 8 in that on November 4, 2015 in the Interfaith Center at 1545 Atlantic Avenue in Brooklyn, New York at approximately 11 a.m., Davis threatened staff members including Dr. Valbrun, the psychiatrist and several nurses. Based on his knowledge of Davis’ actions the previous day, when he caused a female patient to require surgery, Dr. Valbrun concluded these threats were serious. Accordingly, there was sufficient evidence presented for the hearing officer to make a preliminary determination of probable cause. At the conclusion of the preliminary hearing, the hearing officer set *855 forth a coherent decision of probable cause complete with fact-findings and conclusions.
CPLR 4507 provides that “confidential relations and communications between a psychologist . . . and his client are placed on the same basis as those provided by law between attorney and client, and nothing in such article shall be construed to require any such privileged communications to be disclosed.” The Court of Appeals has held that a psychologist may not be called to testify to the accuracy of a client’s story or provide records of psychiatric treatment. (See People v Wilkins, 65 NY2d 172, 178-179 [1985].) Moreover, Mental Hygiene Law § 33.13 (c) (1) provides in pertinent part that
“information about patients or clients . . . including the identification of patients or clients, clinical records or clinical information tending to identify patients or clients . . . shall not be a public record and shall not be released by the offices or its facilities to any person or agency outside of the offices except . . . pursuant to an order of a court of record requiring disclosure upon a finding by the court that the interests of justice significantly outweigh the need for confidentiality.”
In this case, Davis did not waive confidentiality.[3] There was no order by a court requiring disclosure and there was no finding that the interests of justice significantly outweigh the need for confidentiality. Rather, the hearing officer simply stated after receiving an objection to the line of questioning governed by physician-patient confidentiality, “We don’t know if he’s under Dr. Valbrun’s care. Was Mr. Davis under your care?” Dr. Valbrun answered in the affirmative: “[p]artially, because I’m the supervisor of the treating psychiatrist ... I was involved in some of the conferences, the meetings that we had.” (See tr at 8-9; respondent’s exhibit F.) Yet the hearing officer concluded, “I’m going to overrule your objection, and we’re going to proceed. You can always file a writ if you think that Mr. Davis’s rights have been violated at this time.” (See tr at 10; respondent’s exhibit F.)
This court finds that Davis’ rights were violated when Dr. Valbrun was permitted to testify to confidential information for which he acquired in attending to a patient in a professional capacity. The court finds that there was a “professional *856 relationship” between Davis and the psychiatrist. Considering the scant evidence in the record, it is difficult to tell whether the information conveyed by Davis to his psychiatrist was part of the information necessary for his treatment. After the threats, however, treating staff ordered a sedative administered to Davis; prior to that point he had been given only his regular medication despite the alleged violent incident a day earlier. On balance, these events militate in favor of seeing Davis’ agitated state as a symptom of the need for treatment and the hospital staffs actions as their response.
DOCCS claims that because Davis’ admissions were threats to punch the psychiatrist and other nurses present, they were not privileged since Davis had no reason to believe that it would remain confidential. Yet all of this occurred in the context of the treatment staff attempting to have a meeting with Davis. In addition, regardless of whether a psychiatrist is required or permitted by law to report instances of abuse or threatened future harm to authorities (see Mental Hygiene Law § 29.29), it does not follow that such disclosure necessarily constitutes an abrogation of the evidentiary privilege a criminal defendant enjoys under CPLR 4504 (a). The privilege encourages unrestrained communications between a patient and his medical provider so that the patient may obtain diagnosis and treatment without fear of embarrassment over potential disclosure. It also encourages physicians to be forthright in recording their patient’s confidential information; and it protects a patient’s reasonable privacy expectations against disclosure. Confidentiality is essential to psychiatric treatment and protects communications and medical records of the patient.
The physician-patient privilege is to be given a broad and liberal construction to carry out its policy. (Matter of Grand Jury Investigation in N.Y. County, 98 NY2d 525 [2002].) The privilege has been held to apply in contexts such as legislative hearings (see Matter of City Council of City of N.Y. v Goldwater, 284 NY 296 [1940]), and administrative hearings (see e.g. Matter of Furch v Bucci, 245 AD2d 749 [3d Dept 1997]). The legislature has not created an express exception permitting a psychiatrist to testify concerning an admission made by Davis during the course of a professional relationship. Since Davis’ statements are subject to the psychiatrist-patient privilege and without any waiver or exception, their admission in evidence through the testimony of Dr. Valbrun violated CPLR 4504 (a) and 4507.
*857 In People v Rivera (25 NY3d 256 [2015]), the Court of Appeals made clear that disclosure may not be compelled when a client’s liberty is at stake in a criminal trial, even if the information has been conveyed for other purposes because of a legislative exception. A preliminary parole hearing also places the parolee’s liberty at stake. Although the treatment staff were within their rights to call the NYPD and disclose Davis’ information to law enforcement, no exception to the privilege exists to permit confidential information to be disclosed at the preliminary hearing for the purpose of establishing probable cause against Davis. Therefore, the writ is granted and a new hearing shall be held once Davis’ competency has been evaluated.

. Rule No. 8 of the Certificate of Release to Parole Supervision states: "I will not behave in such manner as to violate the provisions of any law to which I am subject which provide for a penalty of imprisonment, nor will my behavior threaten the safety or well-being of myself or others.” (Emphasis added.)

. The hearing officer’s summary dismissal of counsel’s application regarding Davis’ competency demonstrates a lack of awareness of the difficulty of counsel’s position. The parolee indeed may not be competent to properly communicate with his attorney. Yet the attorney is forced to make legal decisions at the hearing to preserve the record. The attorney cannot be confident that his client is fit enough to identify his objectives and ratify counsel’s strategic decisions to further those objectives.

. The privilege of nondisclosure belongs to the patient alone. (People v Wilkins, 65 NY2d 172 [1985].)